IN RE ESTATE OF WILLIAM A. LINCH.
WILLIAM R. LINCH, APPELLANT, V. CLARENCE LINCH, AP-
PELLEE.

287 N. W. 88

FILED JULY 18, 1939. No. 30621.

*Burkett, Wilson & Van Kirk,* for appellant.

*Perry, Van Pelt & Marti* and *L. B. Fuller, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, MESSMORE and JOHNSEN, JJ., and LANDIS, District Judge.

MESSMORE, J.

William A. Linch departed this life December 24, 1906, leaving surviving him his widow, Arvilla J. Linch, four children by his first and eight children by his second marriage. His last will and testament was admitted to probate. Executors were appointed, and on October 9, 1917, final settlement of the estate was had and accounts of the executors approved and executors discharged. William R. Linch, the appellant, was then appointed successor-trustee, the

will of William A. Linch having created a trust, terminable, according to the terms of the instrument, at the death of his widow, and such trust had not yet closed. The successor-trustee came into possession of personal property from all sources in the amount of $385.83, and of real estate, known as Nos. 235-237 North Tenth street, in Lincoln, Nebraska. The title to the real estate was vested in Arvilla J. Linch for her natural life, with the remainder over to the children of William A. Linch, share and share alike, according to the terms of the will, and, in addition, all the net income of said property over and above $80 a month, later changed by codicil to $70, was to be held by Arvilla J. Linch as trustee for the children of her husband, to be distributed as the residue of his estate. Arvilla J. Linch departed this life January 15, 1937, at which time her life estate was terminated, and the title to the trust realty was vested in the children of her husband. The appellant (hereinafter designated trustee) filed his report February 26, 1937, in the county court of Lancaster county, praying that such report be approved and that he be discharged as trustee.

At the time of the trustee's appointment there was no specific statute in this state governing trusteeships. However, where the provisions of a will created a trust, the county court, having exclusive and original jurisdiction over the probate of wills and administration of estates, generally appointed a trustee to carry out the provisions of the trust so created in the will, after the accounts of the executors had been approved and the executors discharged. In 1931, chapter 42, Laws 1931, was passed, vesting the county court with jurisdiction over trust estates. This law now appears as sections 30-1801 to and including 30-1805, Comp. St. Supp. 1937, and controls the handling of trust estates, applying to all trustees appointed either before or after its enactment. *In re Estate of Greenamyre,* 133 Neb. 693, 276 N. W. 686. Under the provisions of the statute cited, the trustee is to make and return to the county court a true inventory of all the property coming into his possession, to faithfully execute the trust under the direction of

the court, and to settle his account with the court at the expiration of his trust. The provisions of the statute relate to procedure only.

The appellant (trustee), seeking to comply with the provisions of the statute, filed his final report, showing his receipts and expenditures as trustee, as follows: Total paid out $55,354.51; items received from rents in the aggregate sum of $54,720.54, leaving a deficit of $633.97. The trustee's accounts were gone over by an expert accountant procured by appellee Clarence Linch, a brother of the trustee. Five or six discrepancies were found and corrections made, as evidenced by a supplemental report. While we do not place the stamp of approval upon the manner in which the trustee's accounts were kept, and recognize that to make the best accounting the accounts of a trustee should be kept separate from other accounts, we are not unmindful of the manner in which the business of the trust in question was carried on by the trustee for a period of years, without objection from any of the heirs; in fact, three-fourths of the heirs, owning the greater interest in the fee title of the trust estate, are satisfied with every item, for which the trustee accounts, and acquiesce in the allowance made by the court for services rendered the trust estate by him. The foregoing statement is made for the reason that the trust funds were seemingly carried by the trustee with his own funds; and claim is made that the account and report were made up at one time. The county court, after an examination of the items shown in the report and the vouchers received in evidence, approved the report, as did the district court. The case is tried *de novo* in this court.

In 65 C. J. 935, it is said: "As a general rule it is the duty of a trustee to take and preserve vouchers for payments which he makes. * * * When proper vouchers are produced, they are of themselves sufficient evidence of disbursement without further proof. Failure to support each item by vouchers does not warrant disregarding the whole account."

We have examined the final report, the receipts and the account of the trustee and come to the same conclusion as

did the county and the district court, that the account should be approved and the trustee discharged. The findings of the district court in this respect will, therefore, not be disturbed.

Clarence Linch, the brother (hereinafter referred to as appellee), filed objections to the report, setting forth therein several different items. The county court overruled the objections, with the exception of an item for $750, which was disallowed, this amount evidencing the installation of a cooling system in the building belonging to the estate, which will be referred to later in the opinion. The county court also allowed the trustee $1,000 as fee for his services. From the judgment of the county court Clarence Linch appealed to the district court, where the objections of appellee and cross-appellant (as designated in this court) were sustained as to one item in the amount of $3,176.71 for breach of trust, and also the item in reference to the cooling system, above mentioned, comprising a total of $3,926.71, constituting the liability of the trustee to the estate, and the court overruled all other objections of the appellee to the report, and, in addition, allowed the trustee $1,000 for his services. The final judgment entered against the trustee, after making deductions for allowance of services, was in the amount of $2,225.93. From this judgment the trustee appealed to this court, and Clarence Linch filed a cross-appeal.

We have carefully examined the evidence in reference to all items objected to by the appellee in the district court, and, without restating the evidence as to each separate item, we conclude that the items to be reviewed in this court are: (1) The item for alleged breach of trust in the amount of $3,176.71, as hereinafter discussed in the opinion; (2) the item involving the expenditure of $1,138 for the cooling system, the claim being made that such system was placed by the trustee in the office building belonging to the estate expressly for his own benefit. We shall also discuss the objections of the appellee to the compensation awarded the trustee for his services and the collection of rents by him, his accounting therefor, and the objection on the part of

appellee that the trustee did not account for the reasonable and fair rental of the real estate belonging to the trust estate.

When the trustee took possession of the building, it was in a bad state of repair and had been unoccupied for a long period of time. He procured an order from the county court allowing $1,200 for the purpose of repairing the building, and an assessment was made against the heirs in the amount of $210 each; later on some of the heirs paid an additional $65. The repairing of the building covered a period of 90 days, and the work was supervised by the trustee. The repairs consisted of a new front, general repairs throughout, cementing or stuccoing the front and back of the building, raising and leveling the floors and strengthening the building. The object in repairing it was to create an income for Arvilla J. Linch, and the matter was discussed with the heirs, some of them being present at different times during the progress of the work. The building was then rented for a garage to John Linch, a brother of the trustee, and subsequently to the Western Furniture Company, the Capital Supply Company, and the Richmond Candy Company. All rents were collected by the trustee from such time until 1926, when the building was two-thirds destroyed by fire. Out of the rentals the trustee claimed to have paid his mother the sum of $100 a month, in addition to paying for repairs, upkeep and taxes. As a result of the fire the trustee received $15,000 insurance carried on the building. After the fire there was some controversy as to whether the building should be rebuilt or the ground sold and the proceeds placed at interest for the benefit of Arvilla J. Linch. However, it was finally determined that the building should be reconstructed. The trustee supervised the work of reconstruction and the purchase of material, and the building was then made into a two-story structure, requiring his services for a period of four months.

The appellee contends that the trustee received no orders from the court to make the repairs or remodel the building, except the order permitting the expenditure of $1,200 for

such purpose, and cites the following rule: "It is the general rule that a trustee has power to make whatever repairs are necessary for the preservation of the estate, but has no power to make large and extensive improvements, unless expressly authorized by the instrument creating the trust,"—citing cases. *Maynard v. Columbus,* 150 Ky. 817, 150 S. W. 1019.

In the instant case the heirs made no objections to the repairing of the building in the first, or to the remodeling thereof in the second, instance. They recognized that Arvilla J. Linch had a life interest in the estate, and that by such repairs and remodeling of the building she would obtain an income from the rents, and that this was the only way that the property of the trust estate could be utilized for her benefit. We hold that the repairs and remodeling of the building, under the circumstances as shown by the evidence, were proper; that the heirs acquiesced in and ratified the trustee's act; that objections made come too late to be considered and are barred by laches.

The rental history of the building since the time of its reconstruction shows that the average rental per month, from 1928 to 1936, was $156. The upper or second floor was given over to offices, housing a lightning rod company, of which the trustee was president, the Lincoln Hail Insurance Company, in which he at one time held the office of secretary-treasurer, the Western Finance Company and another small insurance company in both of which he had an interest. The lower part of the building was given over to various business concerns. The appellee's claim is that the fair and reasonable rental value of the building from June 1, 1927, to January 15, 1937, was $225 a month, or a total of $25,987.50, whereas the trustee accounted for only $18,050, leaving a balance of $7,937.50 in rents unaccounted for. The evidence is conflicting as to the reasonable rental value of the property. However, we must consider the location of the property, the rents payable in the immediate vicinity by other tenants, and while it is true that the trustee has rented the second story of the building to companies in

which he had an interest, yet it was by his efforts and his interest in the various business enterprises that the second floor was rented. In view of all the circumstances and the evidence disclosed by the record, we arrive at the same conclusion as did the district court that the trustee rented the building for the trust estate for a reasonable and fair amount.

The appellee contends that it was not proper for the trustee to become a lessee of the trust estate, and cites in support thereof 65 C. J. 792, wherein it is said: "It is improper for the trustee himself * * * to become lessee." Preceding this statement, the text reads (section 664): "Trustees possess general power to lease trust property on such terms, conditions, and rentals as are reasonable and customary for that class of property in the particular vicinity, provided it be for the advantage and protection of the *cestuis que trust*." In the case at bar, appellant, himself, was not the lessee. The companies in which he owned an interest or held office were the lessees of the second floor.

We believe that, where a trustee has acted in good faith, a court of equity will hold him accountable only for what he actually received, and will not charge him with proceeds or profits which he might have received. *Van Buskirk v. Van Buskirk,* 148 Ill. 9, 35 N. E. 383.

With reference to the item objected to by appellee in that the trustee failed to account for $3,176.71, as above stated, the evidence discloses that the trustee was secretary and treasurer of the Lincoln Hail Insurance Company, a tenant in the building. A written lease was negotiated with the insurance company extending from January 1, 1931, to January 1, 1936, at a rental of $65 a month. The trustee did not sign the lease as secretary and treasurer, but it was signed by an officer of the insurance company. The company occupied the premises during 1931 and for about four months in 1932, when the department of insurance of the state of Nebraska took over the company. The trustee employed counsel to file a claim in the case of *State v. Lincoln Hail Ins. Co.,* 133 Neb. 496, 276 N. W. 169, for the unpaid

rent. Such claim and objections thereto were filed. The record does not show that there was ever a hearing had on the claim and objections filed. The final decree in the case of *State v. Lincoln Hail Ins. Co., supra,* does not specifically mention the claim, but does show an adjudication of some of the claims. The claim was apparently never allowed. It is contended by appellee that, by an interpretation of the decree, the claim was, in fact, disallowed. The assets of the insurance company were later sold to one Carr, acting for and in behalf of himself, and the trustee, the latter becoming coowner of the assets of the insurance company.

The district court found that the account for the unpaid amount of rent in the sum of $3,176.71 against the Lincoln Hail Insurance Company was a just claim and collectible, and that, the trustee having failed to collect the amount, it is chargeable against him. Under the circumstances as disclosed by the evidence and as set out above, we conclude that the trustee was negligent and failed to exercise the degree of care that a prudent and reasonable person would exercise in the management of the business of the trust estate. The trustee was negligent in that he failed to pursue the claim of the estate against the insurance company, and, in fact, in owning and holding the assets of the insurance company and at the same time standing in a trust relationship to the estate, and, having the assets in his hands, made no effort to apply the same towards the payment of rents as evidenced by the lease.

The following rule, adopted by this court in *Masonic Bldg. Corporation v. Carlsen,* 128 Neb. 108, 258 N. W. 44, and in *Wells v. Carlsen,* 130 Neb. 773, 266 N. W. 618, applies: "It is well settled that every violation by a trustee of a duty which equity lays upon him, whether wilful and fraudulent, or done through negligence, or arising through mere oversight or forgetfulness, is a breach of trust. The term therefore includes every omission or commission which violates in any manner either of the three great obligations * * * of carrying out the trust according to its terms, of care and diligence in protecting and investing the trust property,

and of using perfect good faith." 3 Pomeroy, Equity Jurisprudence (4th ed.) sec. 1079. And the following authorities are likewise applicable under the circumstances of the instant case as shown by the evidence:

In 2 Perry, Trusts and Trustees (7th ed.) p. 892, it is said that where trustees have the management of property they must use due diligence in collecting rents, and at page 1541 the author states: "A loss that happens through the negligence of the trustee must be borne by him."

"A trustee commits a breach of trust not only where he violates a duty in bad faith, or intentionally although in good faith, or negligently, but also where he violates a duty because of a mistake as to the extent of his duties and powers. This is true not only where his mistake is in regard to a rule of law, whether a statutory or common-law rule, but also where he interprets the trust instrument as authorizing him to do acts which the court determines he is not authorized by the instrument to do. In such a case, he is not protected from liability merely because he acts in good faith, nor is he protected merely because he relies upon the advice of counsel." Restatement, Trusts, 531, sec. 201.

For the foregoing reasons, we conclude that the district court was right in finding against the trustee in the amount of $3,176.71 for breach of trust on his part.

The appellee objects to the installation of a cooling system in the building, placed therein by the trustee. This claim was disallowed by the county and the district court. We find from a review of the evidence that such ruling should not be disturbed; that the cooling system was beneficial to the trustee, and to him only, and did not enhance the value of the property or increase the rents therefor.

Appellee contends that the trustee, at the time of his appointment, agreed to serve without compensation, and that the court is without power to allow him compensation. The evidence shows that the appellee contemplated his appointment as trustee, but, due to the fact that he was a resident of Omaha and that the trust estate could be more easily handled and with less expense by a resident of Lincoln,

where the trust property was situated, he was not appointed. The evidence upon which he bases his contention that the trustee should not be paid an allowance for his services is a conversation alleged to have occurred at the mother's house, where the appellee, the trustee, a sister and the mother were present, and in which it is claimed the trustee stated he would serve without compensation. This statement the trustee denied. The following authorities are cited to support appellee's contention:

"A trustee's waiver of his commissions is a fact to be shown by the evidence, either by express declarations, or by acts and declarations manifesting an intent and purpose not to charge commissions, or by a course of conduct from which such intent and purpose may be implied. Waiver has been held to have been established where it appeared that the trustee agreed to serve gratuitously if appointed to the office and his appointment was made with that understanding; where the ultimate period for accounting was allowed to pass without claim made for commissions." 65 C. J. 913.

"A trustee who, through friendship, accepts money for safe-keeping and investment, without any agreement for compensation, is not necessarily entitled to pay for his services where he fails to perform his duties." Baird v. Lane, 115 Neb. 413, 213 N. W. 512.

Unquestionably, it is apparent from the record that services beneficial to the trust estate were rendered by the trustee over a period of a number of years,—his supervision over the repairing of the building, in the first instance, the obtaining of tenants and collection of rents; his supervision over the remodeling of the building for a period of time, and the collection of rents and accounting therefor.

In 2 Perry, Trusts and Trustees (7th ed.) 1556, sec. 919, the author states: "In many states the commissions and compensation of the trustees depend upon their fidelity in the administration of the trust. If they are guilty of any breach of trust, or of any vexatious or improper conduct, the courts can withhold all compensation, or they can allow

such compensation as will pay for the value of their services so far as they have been beneficial to the estates."

In 65 C. J. 910, with reference to compensation allowance to trustees, we find the following language: "The accepted rule in this country at the present time, however, is * * * for courts of equity to exercise a just discretion and make or withhold allowance as they consider the particular circumstances require."

The judgment of the district court is affirmed, with directions to remand the cause to the county court for distribution of the funds remaining in the hands of the trustee, as provided for by law.

AFFIRMED.