JOHN A. CREIGHTON HOME FOR POOR WORKING GIRLS, APPEL-
LEE, V. ANNE WALTMAN ET AL., APPELLANTS.

299 N. W. 261

FILED JULY 11, 1941.   No. 31104.

*Walter R. Johnson, Attorney General, Edwin Vail* and
*Amos Thomas,* for appellants.

*Kennedy, Holland, DeLacy & Svoboda* and *Edward F.
Leary, contra.*

4

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

SIMMONS, C. J.

John A. Creighton, by his will, bequeathed to his executors in trust the sum of $50,000 (together with certain residuary sums) ; one-half of said sum was to be used to purchase a site and build thereon "a home for poor working girls" and the remaining one-half to be invested "in interest-bearing securities" and the "interest derived therefrom" was to be applied "to the support of the said charity." The validity of this bequest was determined in *In re Estate of Creighton*, 91 Neb. 654, 136 N. W. 1001, and the trust there considered to be a "public charity."

The trustees received the gross sum of $177,453.80 from the estate.

Subsequently, in 1913, "The John A. Creighton Home for Poor Working Girls," a corporation (plaintiff herein), was formed under the provisions of the statutes relating to charitable organizations. Thereafter the trustees under the will, on petition to the district court for Douglas county, Nebraska, submitted their resignations and requested that plaintiff be appointed as trustee to administer the charity, so that a body be had capable of maintaining the charity and insuring a continuity of purpose and plan and maximum benefits. They further prayed that the court by its orders should safeguard the administration of the trust and that the supervising power of the court be reserved and exercised. That court, by its decree, accepted the resignations and appointed the plaintiff as trustee in the establishment and maintenance of the charity. That court further decreed: "In order that there be no doubt as to the continuing supervisory power of this court of equity over the administration of the said charity it is hereby expressly provided that the said corporation in the operation of the said charity and in all its acts as such trustee is subject to the powers of the court of equity respecting the administration of public charities."

Thereafter the plaintiff, as successor in trust, assumed

the responsibilities of said trust, and under the supervisory power of the court has been administering said charity.

Plaintiff's articles of incorporation provide: "The funds and money of this corporation may be invested in loans secured by first mortgages upon real estate of at least double the amount of the loan; or in loans secured by railroad bonds; or in city, county, state or government securities; or in loans to individuals or corporations when secured by collateral of a value six times the amount of such loan to the individual or corporation." It will thus be noted that the investments that could be made from the funds of said trust were restricted both by the will and by the articles of incorporation of plaintiff. It appears that the home has been established and successfully operated for a number of years. The trustee has not only preserved the original trust funds, but by judicious management has increased the amount of trust fund assets, so that, at the time of the hearing in the court below, it had on hand some $184,000 in cash, $59,000 in interest-bearing securities, and $90,000 in real estate, including the home building and furnishings.

The trustee, by petition filed in the district court for Douglas county, recites the history of this trust and sets out that, because of the economic depression that has existed for some years in Nebraska, the nation and in the world, and the resultant changes in and effects upon business conditions, methods, and concepts, it has been impossible to obtain for investment "interest-bearing securities" paying reasonable returns; and that investments such as it is authorized to make under its articles are either not available, or are of doubtful value and subject to wide price fluctuations, and that because of this situation it presently has uninvested and unproductive a large part of the trust funds. The trustee further sets out that there are available for investment sound securities in the form of preferred and common stocks which accord to the owner a reasonable return upon the investment and which would make it possible for the safe continued operation of the home. The trustee further sets out that the returns presently received on in-

vestments which it has authority to make are negligible and insufficient to insure the continuance of the home as contemplated by the creator of the trust. As to this feature of the case the trustee prays that the terms of the trust may be altered so that the field of investments which it may make be broadened to include selected preferred stocks and seasoned common stocks.

The attorney general was made a party to the action and appeared as a representative of the public interest. Certain occupants of the home were made parties and appeared representing the beneficiaries of the trust. The issues presented by these parties will be discussed later herein.

Trial was had. The court made extended findings of fact and conclusions of law and entered its decree in the following language:

"It is considered, ordered, adjudged and decreed:

"(A) That the Home for Poor Working Girls Trust, established by Paragraph Tenth of the Last Will and Testament of John A. Creighton, deceased, be broadened to effectuate the intention of the Testator, and to permit the continuation of said public charity and to preclude the failure and collapse of said charity, by modifying the investment powers of the Trustee Plaintiff and Applicant, the John A. Creighton Home for Poor Working Girls, a corporation, to permit the Trustee, in its discretion, to invest its Trust Fund in securities other than 'interest-bearing securities.'

"(B) That the investment portfolio of the said Trust fund shall be divided as between interest-bearing securities (as herein elsewhere defined), selected preferred stocks (as herein elsewhere defined), and seasoned common stocks (as herein elsewhere defined) according to the discretion of the Trustees of the Plaintiff and Applicant, but in no case shall more than one-half of the Trust fund available for investment be invested in any one of the three aforedesignated classes of securities, provided:

"(1) A selected preferred stock, permissible for investment of the Trust fund, shall be construed to mean a preferred stock upon which dividends have been declared and

paid continuously, without interruption, for not less than five (5) years, prior to the investment.

"(2) A seasoned common stock, permissible for investment of the Trust fund, shall be construed to mean a common stock upon which dividends have been declared and paid continuously, without interruption, for not less than ten (10) years prior to the investment.

"(3) Interest-bearing securities, permissible for investment of the Trust fund shall be construed to mean promissory debt obligations of Governments, Federal and State; municipalities; public corporations; and private corporations, but as to the notes, bonds or debentures of private corporations, such securities, or if refunding obligations, the preceding securities, shall have been outstanding not less than three (3) years without default or waiver of default.

"(C) That the Trustees or Directors of the Plaintiff and Applicant corporation are hereby declared not to be, nor become, personally liable in the selection of investments thereof, nor in their depreciation, except upon the affirmative demonstration of fraud or negligence in the selection of investments, or the want of exercise of such reasonable care as prudent men would use in the selection of their own investments but made with a view of the preservation of the investment while realizing a reasonable return thereon.

"(D) That the Plaintiff and Appellant corporation be, and it is hereby, authorized to amend its Articles of Incorporation to conform to the enlarged investment jurisdiction and the limitations thereon hereinabove conferred and imposed, respectively, and to express the responsibility of the individual Trustees or Directors of the said corporation as herein above set forth.

"(E) That the Court does hereby retain continued supervisory control over the administration of the Trust, including annual reports from the Trustee and their approval.

"(F) That the costs be and they are hereby charged against the Plaintiff and Applicant to be paid out of the Trust fund herein involved."

The attorney general and the occupants of the home appeal.

Before entering upon a discussion of the assignments of error it may be well to point out that the obvious primary purpose of Mr. Creighton in establishing this trust was that poor working girls might have a home and that that home have financial support of an enduring nature. To that end he provided funds for the physical plant and funds to be held in trust to furnish income to be applied to the primary purpose. As a means to the accomplishment of that end he provided that a part of the trust funds be invested in "interest-bearing securities" and that the interest be used to support his worthy charity. Obviously, both from the terms of the will and as a practical proposition, it is necessary that the principal fund be preserved and also that it be made to produce an effective income. Otherwise, the purpose of the trust and Mr. Creighton's charity would fail. The requirement as to the investment of the funds was one which, at the time the will was made, had been demonstrated to be safe by economic standards and practices then in force. It had received, not only sanction as a safe business practice, but the approval of legislative bodies and courts. It is likewise obvious that the economic situation now existing is one which could not reasonably have been foreseen by Mr. Creighton at the time the trust was created.

Must the limitation imposed almost four decades ago remain unaltered?

Appellants present the proposition that certain statutory provisions, to wit, chapter 30, art. 18, Comp. St. Supp. 1939, and section 27-601, Comp. St. Supp. 1939, prevent the granting of relief requested by the plaintiff. A construction of the provisions of the statutes cited is unnecessary. The trust here was created by the Creighton will. It is a public charity. Trustees named in the will qualified and received the trust for administration. Subsequently they presented to the district court for Douglas county a petition declaring the provisions of the trust, accounting for the funds in their possession, resigning as trustees, and asking for the appoint-

ment of the plaintiff as trustee. That court, exercising its inherent jurisdiction over the administration of charitable trusts, appointed the plaintiff as trustee and retained jurisdiction over the administration of the trust. The right to exercise that jurisdiction and the validity of that action are not challenged. That court is not being asked to take jurisdiction over a trust in the possession of the plaintiff. The court has that jurisdiction. The powers of the plaintiff stem from the order of the court appointing it as trustee. As trustee it is an instrumentality of the court, and exercises its power over the trust, not by virtue of its incorporation, but by virtue of its appointment by the court. The continued exercise of its power as trustee rests upon authority given it by the court and not upon its articles of incorporation.

The established construction of the Constitution and the jurisdiction of the district courts of the state in the administration of trusts are clearly stated by Judge Eberly, speaking for the court, in *Burnham v. Bennison*, 121 Neb. 291, 236 N. W. 745:

"It may be said that, by the terms of the Constitution, district courts in Nebraska are vested with 'chancery jurisdiction.' Const. art. V, sec. 9. This we have construed as vesting district courts with equity jurisdiction which they may exercise without legislative enactment. *Matteson v. Creighton University*, 105 Neb. 219. Indeed, this court is committed to the view that, not only is equity jurisdiction conferred by the terms of the Constitution, but as thus conferred it is beyond the power of the legislature to limit or control. That, while the legislature may grant such other jurisdiction as it may deem proper, it cannot limit or take from such courts their broad and general jurisdiction which the Constitution has conferred upon them. *Lacey v. Zeigler*, 98 Neb. 380. One of the well-recognized grounds of equity jurisdiction thus conferred on, and available in, courts of this state, by virtue of this constitutional provision, is the supervision of the administration of trusts. *Matteson v. Creighton University*, 105 Neb. 219; *Gotchall v. Gotchall*, 98 Neb. 730." It necessarily follows that the district court

for Douglas county has jurisdiction of the subject-matter and of the property in this trust. It has for years been exercising that jurisdiction in the administration of this trust. It has the power and the duty to continue to do so. The statutes cited are not controlling.

Appellants contend that "no sufficient case was made out for the exercise of equity jurisdiction to change or alter the plan or scheme of operation of the charitable trust." Appellants concede "that equity exercises inherent jurisdiction over charitable trusts," but argue that the evidence does not show that the estate may be totally lost to the beneficiaries if the change is not made. It appears from the evidence that the average interest yield on book values of securities held by the trust has declined from 10.19 per cent. in 1916 to 2.55 per cent. in June, 1940; that this decline has been gradual and persistent; and that the disbursements for the year ending June 29, 1940, exceeded the trust income, and that it has been difficult, if not impossible, to secure safe investments within the field of securities specified by the will.

The argument is that the institution could continue to operate upon a restricted basis, if necessary, without the change being granted. It must be remembered that the purpose of the trust was that the home be operated. That purpose will be defeated to the extent that operations are restricted. The trustee is not required to wait until operations are materially restricted or suspended before moving to correct the situation, if it can be corrected by proper means. Neither should an equity court delay remedial orders before granting relief until such time as the purpose of the trust is defeated, in whole or in part. Sufficient cause has been shown to justify the use of the equity powers of the court to prevent the defeat of the purposes of the trust, bearing in mind the fact that the court retains at all times supervisory control over the administration of the trust.

We come, then, to the question, "should the powers of the trustee as to investments which it must make be broadened in the manner requested?" The secondary restriction

on investments made in the will and in the authority given the trustee by the court must yield to the primary purpose of the trust, which is the effective operation of the home. The primary object is to preserve the trust property so that it may be used to the greatest advantage to the beneficiaries. This property must produce an income. To do so it must be safely invested in productive property. The present base of investments is shown to be inadequate to the need. The broader base proposed permits a wider diversification of investments, assuring a better balanced investment of the funds of the trust, and should tend to safeguard the preservation of the principal fund. The restrictions proposed largely remove the element of speculation from the purchase of common and preferred stocks. It permits a proper exercise of the business judgment of the trustee, controlled by the honesty and integrity of the men who manage the trust, guided, as they must be, by a high purpose to make the trust successfully serve the purpose for which it was created. If at any time the powers granted by the court are shown to be improper or the trustee fails in the proper performance of its duties, the powers of the trustee may be changed by the district court. The trustee may also be changed.

In *Matteson v. Creighton University*, 105 Neb. 219, 179 N. W. 1009, this court had for consideration the proper disposition of another of Mr. Creighton's trusts. There, owing to changed conditions and without legislative enactment or the authority of the instrument creating the trust, the sale of real estate and the investment of the proceeds in interest-bearing securities were approved. The primary purpose of the trust was served by so doing.

This entire matter is discussed in its various angles in 2 Scott, Trusts, secs. 167, 227.11; and 3 Scott, Trusts, sec. 381. See, also, 1 Restatement, Trusts, 645, sec. 227; 65 C. J. 683, 805.

The conclusion is that an equity court may authorize the investment of trust funds in common and preferred stocks under conditions that safeguard the investment and an adequate income return consistent with that safety, in order

that the primary purpose of the trust may be more effectively secured, although such investments were not authorized in the instrument creating the trust.

The plaintiff, on its own motion, suggests a further requirement as to the earnings of corporations be made by a modification of paragraph B (1), (2) and (3) so as to read as follows (the modifying words being shown in italics) :

"(1) A selected preferred stock, permissible for investment of the Trust fund, shall be construed to mean a preferred stock upon which dividends have been *earned,* declared and paid continuously, without interruption, for not less than five (5) years, prior to the investment.

"(2) A seasoned common stock, permissible for investment of the Trust fund, shall be construed to mean a common stock upon which dividends have been *earned,* declared and paid continuously, without interruption, for not less than ten (10) years prior to the investment.

"(3) Interest-bearing securities, permissible for investment of the Trust fund shall be construed to mean promissory debt obligations of Governments, Federal and State; municipalities; public corporations; and private corporations, but as to the notes, bonds or debentures of private corporations, such securities, or if refunding obligations, the preceding securities, shall have been outstanding not less than five (5) years without default or waiver of default, *and the earnings of such corporations (as distinguished from dividends) have been at least twice the interest charges, on the average, during such five years period.*"

This modification of the decree appears to be in the interest of further safeguarding the funds of the trust and it is approved.

Appellants direct attention to paragraph D of the decree authorizing plaintiff to amend its articles of incorporation to conform to the enlarged investment jurisdiction granted. Appellants point out that plaintiff was incorporated under the provisions of chapter 24, art. 6, Comp. St. 1929, and contend that section 24-605 thereof prevents an extension of the powers of investment beyond those expressed therein.

The provisions of the section necessary to be considered are: "All the funds received by any such corporation shall be used * * * or shall be invested, and the income thereof used * * * for the exclusive purpose set forth in the articles of association." Clearly this part of the act contains no restrictions upon the investments to be made, but, standing alone, is a broad grant of power to use the principal fund or to invest and to use the income, for the purposes declared in the articles. The section then provides: "Such corporation may take property by gift, purchase, bequest, or devise, and it shall be lawful to invest the same upon mortgage or in or by loan on railroad stocks or bonds, or any city, county, state, or government securities." This is a legislative description of lawful investments; it is not exclusive of other investments, and obviously not intended to be so, for by the proviso following the corporation is limited to investing such funds in such lawful securities *only* where the securities in which its funds shall be invested are not specified in the articles. The proviso is: "Any such corporation may, in its articles of agreement, specify the kind of securities in which its funds shall be invested, and that no part of its funds shall be invested in any other securities than those named in its articles, or where the securities shall not be specified in the articles of agreement, then such funds shall *only* be invested in such securities as are specified in this article." Clearly, the statute contemplates that the articles may authorize investments in securities other than those named in the act, and that the limitation to the lawful investments named in the act is only applicable where the articles make no provision as to the securities in which investments may be made. To construe the act as urged by appellants would be to hold the proviso to be surplus language.

Bearing in mind the fact that the plaintiff has not received the funds involved in this action in its own right, but holds them as an instrumentality of the court and subject to the court's control, it may be questioned whether the provisions of the act apply to funds so placed in plaintiff's

possession. But not deciding that, it is apparent that it may provide in its articles for the investment of its funds in investments other than those set out in the statute as lawful investments. The court, having control of the fund and having determined to extend the powers of investment of the plaintiff over the fund, properly authorized the plaintiff to amend its articles, so as to embrace the grant of power.

Finally, appellants call attention to paragraph C of the decree defining the liability of the directors of the plaintiff and assert that this court in *In re Estate of Linch,* 136 Neb. 705, 287 N. W. 88, stated that "A trustee, in the management of a trust estate, is required to use that degree of care and diligence that an ordinarily reasonable and prudent man would use in his own business under like or similar circumstances," and contend that having so defined the liability it should not be otherwise stated.

Plaintiff's board of trustees serve without pay. Of necessity, the proper administration of this trust calls for the unselfish, civic-minded service of men of high integrity, experience and training in the investment and administration of large sums of money. Plaintiff seeks a decree defining that liability in order that the men now serving, and those who later may be called upon to serve, may know the extent of the personal liability which they assume in serving this trust. The request is in the nature of one for a declaratory judgment. The granting of the request will aid materially in the retaining and securing of proper men to administer the trust. The creator of the trust did not define the standard of responsibility to be required of the trustees. No statute is cited defining the liability. The court may therefore fix the standard. The trial court properly undertook to define that liability. Is the statement made in the decree a correct definition of the liability? This court has on many occasions defined the liability as applied to facts then before it. For instance, in *First Trust Co. v. Exchange Bank,* 126 Neb. 856, 867, 254 N. W. 569, is this statement:

"A trustee is not an insurer and is not absolutely bound for the results of his acts. As a general rule, the measure

of care and diligence required of a trustee is such as would be pursued by a man of ordinary prudence and skill in the management of his own estate. 26 R. C. L. 1280, sec. 130. He must act honestly and faithfully, in what he believes to be the best interests of the *cestui que trust*. He must exercise sound discretion. He is bound to proceed with diligence in investigating the nature of the proposed. investment, and to use such care in deciding as, in general, prudent men of intelligence and integrity in such matters would employ in their own affairs when making a permanent investment in which the primary object is the preservation of the fund, and the secondary one that of obtaining an income therefrom. *In re Buhl's Estate,* 211 Mich. 124, 12 A. L. R. 569. If he invests in property, it ought to be property which yields an actual income, and which has a valuation in the general sense of the community, founded on that income, and not on remote eventualities and a succession of contingencies. 26 R. C. L. 1307, sec. 161."

Again, in *Masonic Bldg. Corporation v. Carlsen,* 128 Neb. 108, 130, 258 N. W. 44, this court cited with approval the following from 3 Pomeroy, Equity Jurisprudence (4th ed.) sec. 1079 : "It is well settled that every violation by a trustee of a duty which equity lays upon him, whether wilful and fraudulent, or done through negligence, or arising through mere oversight or fortgetfulness, is a breach of trust. The term therefore includes every omission or commission which violates in any manner either of the three great obligations already described: of carrying out the trust according to its terms, of care and diligence in protecting and investing the trust property, and of using perfect good faith."

The matter is again considered and discussed in *In re Estate of Linch, supra* (the appellants quote from the syllabus). The difficulty comes, not in the statement of a rule of liability, but in its application. No objection to the rule, as stated by the trial court is seen. It must be construed, if occasion arises, in the light of decisions of this court and established principles which are applicable. It is limited, of course, to acts done within the scope of the duties and powers of the trustee.

The judgment of the trial court, as modified herein, is affirmed.

AFFIRMED AS MODIFIED.