permanently and totally disabled. Accordingly, we affirm the trial court's order in its entirety.

Affirmed.

Inbody, Chief Judge, participating on briefs.

———————

In re Louise V. Steinhoefel Trust.
Pioneer Manor Foundation and Campbell County
School District No. 1, Gillette, Wyoming, appellants
and cross-appellees, v. Vicki Schlautmann et al.,
appellees, and David Steffensmeier, Trustee,
appellee and cross-appellant.

___ N.W.2d ___

Filed August 26, 2014.    No. A-13-038.

1. **Decedents' Estates: Appeal and Error.** Absent an equity question, an appellate court reviews probate matters for error appearing on the record.
2. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.
3. **Decedents' Estates: Appeal and Error.** In reviewing a judgment of the probate court in a law action, an appellate court does not reweigh evidence, but considers the evidence in the light most favorable to the successful party.
4. **Evidence: Appeal and Error.** An appellate court resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence.
5. **Decedents' Estates: Appeal and Error.** The probate court's factual findings have the effect of a verdict, and an appellate court will not set those findings aside unless they are clearly erroneous.
6. **Negligence: Proof.** In order to prove a cause of action for breach of a fiduciary duty, the moving party must prove the elements of negligence.
7. **Trusts.** The Nebraska Uniform Trust Code requires that a trustee administer a trust in accordance with its terms.
8. **_____.** The Nebraska Uniform Trust Code establishes that trustees owe the beneficiaries the duties of loyalty, impartiality, prudent administration, protection of trust property, proper recordkeeping, and informing and reporting.
9. **Trusts: Liability: Damages.** A violation by a trustee of a duty required by law, whether willful, fraudulent, or resulting from neglect, is a breach of trust, and the trustee is liable for any damages proximately caused by the breach.
10. **Trusts: Words and Phrases.** A breach of trust includes every omission or commission which violates in any manner the obligation of carrying out a trust according to its terms.

11. **Damages.** The amount of damages to be awarded to a plaintiff is a question of fact.

12. **Principal and Agent: Proof: Damages.** To succeed on a claim for breach of fiduciary duty, a plaintiff must prove that the defendant's breach of fiduciary duty caused the plaintiff damages and the extent of those damages.

13. **Real Estate: Valuation: Words and Phrases.** Appraisals are estimates of the fair market value of a property based upon sales of comparable properties and other factors.

14. **Equity: Trusts.** Under Neb. Rev. Stat. § 30-3890(b) (Reissue 2008), the court may impose various equitable relief to remedy a violation by a trustee of a duty the trustee owes to a beneficiary.

15. **Trusts: Proof.** A party seeking to establish a constructive trust must prove by clear and convincing evidence that the individual holding the property obtained title to it by fraud, misrepresentation, or an abuse of an influential or confidential relationship and that under the circumstances, such individual should not, according to the rules of equity and good conscience, hold and enjoy the property so obtained.

16. **Attorney Fees: Appeal and Error.** On appeal, a trial court's decision awarding or denying attorney fees will be upheld absent an abuse of discretion.

17. **Equity: Trusts: Costs: Attorney Fees.** In a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorney fees, to any party, to be paid by another party or from the trust that is the subject of the controversy.

18. **Decedents' Estates: Costs: Attorney Fees.** In general, if a court concludes that a fiduciary breached his duty or requires him to account to the estate, the estate is not liable for his attorney fees. If the fiduciary's defense of his acts is fully successful, he is ordinarily entitled to recover the reasonable costs necessarily incurred.

Appeal from the County Court for Cuming County: RICHARD W. KREPELA, Judge. Affirmed in part, and in part vacated and remanded with directions.

Mark D. Fitzgerald, of Fitzgerald, Vetter & Temple, for appellants.

Andre R. Barry and Kara J. Ronnau, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellee Vicki Schlautmann.

David E. Copple and Michelle M. Schlecht, of Copple, Rockey, McKeever & Schlecht, P.C., L.L.O., for appellees Michael Addison and Renee Wetherelt.

Kenneth W. Hartman and Erin E. Busch, of Baird Holm, L.L.P., for appellee David Steffensmeier.

IRWIN, RIEDMANN, and BISHOP, Judges.

RIEDMANN, Judge.

## I. INTRODUCTION

Pioneer Manor Foundation and Campbell County School District No. 1, Gillette, Wyoming, appeal and David Steffensmeier cross-appeals from an order of the county court for Cuming County. The county court found that Steffensmeier breached his fiduciary duty as the trustee of the Louise V. Steinhoefel Trust, but that no damages resulted from the breach. We affirm these findings, but vacate the order granting interim attorney fees and remand the matter for further findings on this issue.

## II. BACKGROUND

Steffensmeier is the trustee of the Louise V. Steinhoefel Trust, which was originally established in 1999. The appellants, along with the appellees Michael Addison and Renee Wetherelt, are among the beneficiaries of the trust. The trust was partially funded with approximately 1,471 acres of real property located in Gillette. After Louise V. Steinhoefel passed away in 2004, the trust was to provide funds to take care of her son, Robert Steinhoefel. At the time, the trust had sufficient funds to care for Robert, but his expenses increased when he was moved to a nursing home in 2006. Thus, Steffensmeier determined that he needed to sell some trust assets in order to continue to provide for Robert's care. Robert ultimately died in September 2007.

Steffensmeier contacted a bank in Gillette in the spring of 2007 and asked for the name of a real estate agent who could help him sell the 1,471-acre ranch property. He was given the name of Robert Ostlund, a broker with 30 years of experience selling real estate in Gillette. Steffensmeier spoke to Ostlund about selling the property and then sent him the most recent appraisal of the land, which had been completed in January 2004. Steffensmeier told Ostlund he thought they would need

an appraisal done on the property and another on the mineral interests, but Ostlund said no appraisals were necessary. Steffensmeier let Ostlund determine the fair market value of the property because Ostlund had more expertise in that area than Steffensmeier did. After reviewing the 2004 appraisal and conducting some market research in the area, Ostlund determined that an appropriate price for the property was $1,425,000. He was confident in this price and communicated his confidence to Steffensmeier.

The trust provided that upon the death of Robert, Vicki Schlautmann (Vicki), one of the beneficiaries, had the option to purchase the approximately 735-acre portion of the property described as "parcel A." Steffensmeier mistakenly believed that Vicki had an active option to purchase all of the real property at the time he was putting it up for sale. As a result of this mistaken belief, Steffensmeier gave Vicki the opportunity to purchase the entire property before Robert's death, and she and her husband submitted an offer for the full purchase price on June 8, 2007.

Steffensmeier testified that he signed his acceptance of the Schlautmanns' offer on June 12, 2007, but did not mail the signed offer back to Ostlund until June 25. In the meantime, a Gillette real estate broker, Jim Engel, submitted an offer to purchase the property under the name "BDG, LLC," to Ostlund on June 22 in the amount of $2,100,000. Ostlund testified that he had talked to Engel prior to his making the offer and told Engel that the Schlautmanns had already submitted an offer that had been verbally accepted. BDG's offer indicated that it was a backup offer contingent upon the cancellation of the existing sales contract and that if the existing contract was not canceled, then BDG's offer became null and void. Ostlund testified that he did not think BDG's offer was legitimate, and he told Steffensmeier so. Ultimately, the Schlautmanns' purchase of the property closed in August 2007.

After Steffensmeier filed an application with the trial court for final accounting and discharge, the appellants brought this action claiming that Steffensmeier breached his fiduciary duty as trustee of the trust by selling the property to the

Schlautmanns for less than fair market value. During the pendency of this action, the court granted Steffensmeier's applications for interim attorney fees and costs on September 1, 2009, and September 28, 2011.

Trial was held in August 2012. At trial, the appellants' expert witness, Carol McCracken, testified that she appraised the property and concluded that at the time of the sale, the fair market value was $3,480,000. McCracken is from Billings, Montana. She became a certified general real estate appraiser in 2006 and completed 29 ranch appraisals. At the time of trial, she was no longer working as an appraiser and was employed as a correctional counselor at a women's prison.

Steffensmeier also had an expert witness testify, as to his valuation of the property. This expert, Robert Zabel, estimated that the property's value at the time of the sale was $1,477,000. At the time of trial, Zabel had lived in Gillette for 31 years and been a real estate appraiser in Gillette for 20 years. He also worked as a real estate land developer in Gillette from 2002 until 2010. Zabel has been a certificated appraiser since 1994 and is a member of several professional organizations. He estimated that he has performed approximately 1,800 appraisals in his career, completing 1,600 of those prior to 2007.

Zabel did not believe that McCracken reached a reasonable conclusion as to the market value of the property. He did not believe that she was fully aware of the market, including the volume of sales that had occurred and the amount of property that was coming to market. He also recognized immediately that she did not understand which type of appraisal approach she was using. Zabel noted that among her errors, she assumed that if a smaller parcel of property could be sold for a certain price per acre, then a larger parcel could too, but she had no real evidence that that could happen.

After trial, the court concluded that the trust required Steffensmeier to sell the property at fair market value and that he failed to ascertain that value at the time of the sale by failing to get an updated appraisal, failing to promptly offer the property for public sale, and mistakenly giving Vicki an opportunity to purchase the property under the assumption that

she had an active option. The court determined that BDG's offer had so many contingencies and reservations that it was not a valid offer or true reflection of market value. It also concluded that Zabel's estimate of the property's value was substantially more credible than McCracken's. Consequently, the court held that although Steffensmeier breached his fiduciary duty, the property sold at or substantially close to the market value, and that therefore, the appellants failed to prove any damages as a result of the breach. The court therefore dismissed the appellants' complaints and ordered each party to pay its own costs and attorney fees.

The appellants filed this timely appeal, and Steffensmeier cross-appeals.

## III. ASSIGNMENTS OF ERROR

The appellants assign, restated and renumbered, that the trial court erred in (1) determining that the property was sold at or near the fair market value and that there were therefore no damages, (2) discounting the offer from BDG, (3) failing to award any equitable remedies, and (4) failing to award the appellants attorney fees but allowing Steffensmeier, the trustee, to pay attorney fees from the trust assets.

On cross-appeal, Steffensmeier assigns that the court erred in finding that he breached his fiduciary duty and failing to allow him to recover costs and fees.

## IV. STANDARD OF REVIEW

[1-5] Absent an equity question, we review probate matters for error appearing on the record. *In re Estate of Hedke*, 278 Neb. 727, 775 N.W.2d 13 (2009). When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id*. In reviewing a judgment of the probate court in a law action, we do not reweigh evidence, but consider the evidence in the light most favorable to the successful party. *Id*. And we resolve evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. *Id*. The probate court's factual findings have the

effect of a verdict, and we will not set those findings aside unless they are clearly erroneous. *Id*.

## V. ANALYSIS

[6] Before addressing the claims before us, it is helpful to define what constitutes a cause of action for breach of fiduciary duties. The Nebraska Supreme Court has likened a claim for breach of fiduciary duties to professional malpractice. See *Community First State Bank v. Olsen*, 255 Neb. 617, 587 N.W.2d 364 (1998). Accordingly, we have previously determined that in order to prove a cause of action for breach of a fiduciary duty, the moving party must prove the elements of negligence. See *McFadden Ranch v. McFadden*, 19 Neb. App. 366, 807 N.W.2d 785 (2011). Therefore, in order for the appellants to prove that they are entitled to judgment on the breach of fiduciary duty cause of action, they needed to establish that Steffensmeier owed them a fiduciary duty, that Steffensmeier breached that duty, that his breach was the cause of the injury to them, and that they were damaged. See *id*. Establishing a breach of a fiduciary duty is but one element of a breach of fiduciary duty cause of action.

[7,8] The Nebraska Uniform Trust Code requires that a trustee administer a trust in accordance with its terms. Neb. Rev. Stat. § 30-3866 (Reissue 2008). The Nebraska Uniform Trust Code establishes that trustees owe the beneficiaries the duties of loyalty, impartiality, prudent administration, protection of trust property, proper recordkeeping, and informing and reporting. *In re Estate of Robb*, 21 Neb. App. 429, 437, 839 N.W.2d 368, 375 (2013).

[9,10] A violation by a trustee of a duty required by law, whether willful, fraudulent, or resulting from neglect, is a breach of trust, and the trustee is liable for any damages proximately caused by the breach. *Trieweiler v. Sears*, 268 Neb. 952, 689 N.W.2d 807 (2004). A breach of trust includes every omission or commission which violates in any manner the obligation of carrying out a trust according to its terms. *In re Estate of Linch*, 136 Neb. 705, 287 N.W. 88 (1939).

The trial court found that Steffensmeier acted contrary to the terms of the trust when he allowed Vicki to purchase the

entire property when her option to purchase parcel A alone was not yet active. Such action, according to *In re Estate of Linch*, constitutes a breach of Steffensmeier's fiduciary duty. In order to recover on their claim, however, the appellants were also required to prove that Steffensmeier's breach was a cause of injury to them and that they were damaged. This they failed to do.

## 1. Damages

[11] The trial court found that although there was a breach of fiduciary duty, no damages resulted from the breach because the property was sold at or as substantially close to fair market value as could be determined retroactively. The amount of damages to be awarded to a plaintiff is a question of fact. See *Connelly v. City of Omaha*, 284 Neb. 131, 816 N.W.2d 742 (2012). As stated above, we will not set aside the court's factual findings unless they are clearly erroneous. *In re Estate of Hedke*, 278 Neb. 727, 775 N.W.2d 13 (2009).

In this case, the trial court found Zabel's testimony substantially more credible than McCracken's. Zabel had significantly more experience doing appraisal work than McCracken and was very familiar with the market in Gillette. He thoroughly explained the process he used to arrive at a valuation of the property and explained why he disagreed with McCracken's estimated value. Zabel concluded that the value of the property at the time it was sold was $1,477,000, which, as the trial court found, was substantially close to the $1,425,000 purchase price. Consequently, the trial court's conclusion with respect to damages was not clearly erroneous.

The appellants argue that the trial court erred when it failed to make a separate determination of the fair market value of parcel A. Zabel testified that there would not be an increase in price per acre if parcel A were sold separately. He was asked if the property could have been subdivided, and he said that it could have, but he thought that it would be very difficult to establish a price and determine how long it might take to get sold. In fact, he estimated in 2007 that it would have taken more than 8 years to sell separate tracts of the property. So in his opinion, subdividing the property would not have been the

highest and best use of the property. Because the trial court found Zabel's testimony to be credible, it was not clearly erroneous for the court not to separately value parcel A when Zabel opined that that was not the best use of the property and would not result in a higher price per acre for parcel A.

The appellants also claim that the trial court improperly assigned the burden of proof on the appellants to prove the value of any mineral interests present on the property. We disagree.

[12] To succeed on a claim for breach of fiduciary duty, a plaintiff must prove that the defendant's breach of fiduciary duty caused the plaintiff damages and the extent of those damages. See *McFadden Ranch v. McFadden*, 19 Neb. App. 366, 807 N.W.2d 785 (2011). Thus, the burden is on the party making the claim to prove the extent of its damages. The trial court in this case found there was little competent evidence upon which to determine the value of the gas and mineral interests. This conclusion is supported by the record.

According to Steffensmeier, the value of the mineral interests on the property began decreasing in 2006. Vicki testified that although she received $30,342.65 immediately after the sale, that amount was for surface damages and rent, not mineral royalties. She said that as of the time of trial, she had not received any royalty payments for minerals. As such, the appellants failed to prove that the mineral interests had any value at the time of the sale.

We also note that the appellants assert the trial court erred in failing to account for an immediate royalty payment to the Schlautmanns in its analysis of fair market value. But based on Vicki's testimony that the amount the Schlautmanns received was not a royalty payment for mineral interests, we reject this argument.

[13] Finally, without citing any case law, the appellants argue that the trial court's use of the standard "substantially close" was improper. We disagree. Appraisals are estimates of the fair market value of a property based upon sales of comparable properties and other factors. See *In re Estate of Craven*, 281 Neb. 122, 794 N.W.2d 406 (2011). Thus, there was no requirement that the property be sold for the exact amount of

the appraised value, particularly when Zabel's appraisal was conducted 5 years after the sale.

Accordingly, the trial court did not err in concluding that the appellants failed to prove that any damages resulted from Steffensmeier's breach of fiduciary duty when the property was sold as close to fair market value as could be determined retroactively. This assignment of error lacks merit.

## 2. Competing Offer

The appellants assign that the trial court erred in finding that the offer from BDG was invalid and in placing the burden of proving the offer was valid on the appellants. Without citing any case law, the appellants claim that BDG's offer was "an effective offer" and that the burden should have been on Steffensmeier to prove that the offer was not viable. Brief for appellants at 37.

It is not apparent from the trial court's order that it placed the burden with respect to the BDG offer on the appellants. The trial court merely noted that the appellants point to BDG's offer as evidence of the value of the property; but the court found that the "back-up offer had so many contingencies and reservations . . . as to appear to be not a valid offer" and that "there is evidence to support a finding that it was less than a sincere effort to purchase the property and not a true reflection of market value."

The trial court's decision to discredit the backup offer and find that it was not a true reflection of market value was not clearly erroneous. When Engel discovered the property listed for public sale on June 18, 2007, the listing indicated that the property had been under contract since June 13. Engel then contacted Ostlund to inquire about the property, and Ostlund told him that it was under contract with the Schlautmanns and that the deal was "pretty solid." Ostlund told Engel that he had not received the paperwork back yet, but that the offer had been verbally accepted. Engel testified that at the time he submitted his offer, he understood that the property was under contract, but that he submitted his offer as a backup offer, which meant that if the original offer did not go through, his offer would move into the first position. The offer itself

contained this language, noting that it was a backup offer and contingent upon the cancellation of the existing sales contract. If the Schlautmanns' sales contract was not canceled, then BDG's offer was null and void. BDG also reserved the right to declare the offer null and void at any time prior to the cancellation of the Schlautmanns' offer. Based on this evidence, the trial court did not err in discounting the backup offer.

Similarly, the court did not err in concluding that BDG's offer was not a true reflection of the market value of the property. Engel testified that when he makes offers on properties as an investor, he typically determines the amount he is going to offer based on a 30-percent return on his estimated proceeds after the property is broken up and completely sold off. He did not indicate that his offer was based on what he estimated to be the fair market value. In fact, neither Zabel nor McCracken factored BDG's offer into their valuation estimates. Consequently, the trial court did not err in disregarding the backup offer and finding that it was not representative of the market value of the property.

### 3. EQUITABLE REMEDIES

[14] The appellants argue that the trial court erred in failing to consider any equitable remedies, including removing the trustee, ordering an accounting, ordering an appraisal of the mineral interests, and imposing a constructive trust upon any trust distributions otherwise distributable to Vicki. Steffensmeier asserts that this claim was not properly preserved for appeal because such relief was not specifically requested from the trial court. We note, however, that the appellants' operative complaints requested monetary damages and other relief provided by Neb. Rev. Stat. §§ 30-3890, 30-3891, and 30-3893 (Reissue 2008). Under § 30-3890(b), to remedy a violation by a trustee of a duty the trustee owes to a beneficiary, the court may

> (1) compel the trustee to perform the trustee's duties;
>
> (2) enjoin the trustee from committing a breach of trust;
>
> (3) compel the trustee to redress a breach of trust by paying money, restoring property, or other means;

(4) order a trustee to account;

(5) appoint a special fiduciary to take possession of the trust property and administer the trust;

(6) suspend the trustee;

(7) remove the trustee as provided in section 30-3862;

(8) reduce or deny compensation to the trustee;

(9) subject to section 30-38,101, void an act of the trustee, impose a lien or a constructive trust on trust property, or trace trust property wrongfully disposed of and recover the property or its proceeds; or

(10) order any other appropriate relief.

Accordingly, the option to impose equitable remedies was properly before the trial court. We review equity questions in a trust administration matter de novo on the record. See *In re Margaret Mastny Revocable Trust*, 281 Neb. 188, 794 N.W.2d 700 (2011).

We find no error in the denial of any equitable remedies. Because the trial court did not err in dismissing the complaints in this case, there was no reason for the court to remove Steffensmeier as trustee. It was Steffensmeier's application for final accounting and discharge that prompted the commencement of this action, and following the sale of the property, the only remaining trust administration duty left was the distribution of the proceeds. The court, therefore, did not err in denying equitable relief of removing the trustee, and a final accounting had already been filed.

In addition, the appellants claim that the court should have considered additional evidence relating to the value of the mineral interests. Ordering an appraisal of the mineral interests is not an equitable remedy, because the result would be additional monetary damages due to the beneficiaries of the trust. The appellants had the opportunity at trial to present sufficient evidence of the value of the mineral interests, and they failed to do so. The court did not err in refusing to allow them a second opportunity to prove the value of the mineral interests.

[15] Finally, the appellants argue that the trial court should have imposed a constructive trust on any further distributions to Vicki. A party seeking to establish a constructive

trust must prove by clear and convincing evidence that the individual holding the property obtained title to it by fraud, misrepresentation, or an abuse of an influential or confidential relationship and that under the circumstances, such individual should not, according to the rules of equity and good conscience, hold and enjoy the property so obtained. See *Eggleston v. Kovacich*, 274 Neb. 579, 742 N.W.2d 471 (2007). There was no evidence in this case that Vicki's purchase of the property was the result of any wrongdoing on her part. Steffensmeier mistakenly offered her the ability to purchase the entire property at fair market value, and she did so. Thus, the imposition of a constructive trust on any distributions due to her as a beneficiary of the trust was unnecessary. This assignment of error is without merit.

### 4. Attorney Fees

The appellants claim that the county court erred in failing to award them attorney fees and in permitting Steffensmeier to pay attorney fees from the trust assets. On cross-appeal, Steffensmeier argues that the county court erred in failing to award him costs and attorney fees after trial. We note that on two occasions during this action, the court approved interim attorney fees and costs for Steffensmeier payable from the trust assets. We presume it is these orders for payment that the appellants now challenge, as well as the order after trial denying appellants any attorney fees.

Because the county court determined after trial that the trustee had breached his fiduciary duty, we first discuss its decision denying either party attorney fees after trial. We will then turn to the award of interim fees.

### (a) Attorney Fees After Trial

[16] The appellants and Steffensmeier argue that the county court erred in not awarding them attorney fees. On appeal, a trial court's decision awarding or denying attorney fees will be upheld absent an abuse of discretion. *In re Rolf H. Brennemann Testamentary Trust*, 288 Neb. 389, ___ N.W.2d ___ (2014).

[17] Neb. Rev. Stat. § 30-3893 (Reissue 2008) provides when attorney fees are appropriate in trust administration

cases. Section 30-3893 states: "In a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorney's fees, to any party, to be paid by another party or from the trust that is the subject of the controversy."

[18] In general, if a court concludes that a fiduciary breached his duty or requires him to account to the estate, the estate is not liable for his attorney fees. If the fiduciary's defense of his acts is fully successful, he is ordinarily entitled to recover the reasonable costs necessarily incurred. See *In re Guardianship of Bremer*, 209 Neb. 267, 307 N.W.2d 504 (1981).

In the present action, the appellants were successful in proving a breach of fiduciary duty; however, Steffensmeier was successful in proving that neither the appellants nor the trust was harmed. The Nebraska Supreme Court confronted a similar situation in *In re Rolf H. Brennemann Testamentary Trust, supra*.

In *In re Rolf H. Brennemann Testamentary Trust*, a trust beneficiary sued the trustees for breach of their fiduciary duties. The county court dismissed her complaint. On appeal to this court, we found that the trustees had breached their fiduciary duty, but found that the breach was harmless. See *In re Rolf H. Brennemann Testamentary Trust*, 21 Neb. App. 353, 838 N.W.2d 336 (2013). On further review to the Nebraska Supreme Court, that court agreed there was a harmless breach, but remanded to the county court the issue of whether the beneficiary was entitled to an attorney fee. In doing so, the Nebraska Supreme Court stated that it was reluctant to award fees itself, because the county court was in the best position to determine whether "'justice and equity'" required an award of attorney fees and, if so, in what amount. *In re Rolf H. Brennemann Testamentary Trust*, 288 Neb. at 404, ___ N.W.2d at ___.

As in *In re Rolf H. Brennemann Testamentary Trust*, the present case involves a situation in which the trustee breached his fiduciary duty, but no damage to the trust or beneficiaries was proved. In such a situation, whether attorney fees are to be awarded is left to the sound discretion of the trial court to determine if justice and equity require an award of attorney

fees. In the present case, the county court, being in the best position to determine this issue, denied both parties' requests for attorney fees. Given the county court's finding on the merits, that there was a breach but no damages, we find no abuse of discretion in its decision to deny both parties' requests for attorney fees.

### (b) Interim Attorney Fees

The county court approved Steffensmeier's applications for interim attorney fees and costs on September 1, 2009, in the amount of $44,693.29 and on September 28, 2011, in the amount of $62,481.57. The trustee incurred these fees in connection with his preparation and filing of an accounting and in connection with the litigation from which this appeal stems. The county court approved these applications prior to its determination that Steffensmeier breached his fiduciary duty but after the complaints had been filed against him.

Because the county court ordered the interim fees prior to its determination that Steffensmeier breached his fiduciary duty, we vacate the award of the interim fees and remand the matter to the county court to determine whether justice and equity require that the trust bear the cost of these fees. See *In re Rolf H. Brennemann Testamentary Trust*, 288 Neb. 389, ___ N.W.2d ___ (2014). This determination is to be made in conjunction with the final accounting, because some of the fees requested relate to both the litigation and general trust administration, to which Steffensmeier may be entitled under Neb. Rev. Stat. § 30-3865 (Reissue 2008).

### 5. Steffensmeier's Cross-Appeal

On cross-appeal, Steffensmeier argues that the trial court erred in finding that he breached his fiduciary duty when it also determined there were no damages. Based on the terms of the trust and the requirements of § 30-3866, the trial court did not err in finding that Steffensmeier breached his duty to administer the trust in accordance with its terms. But as set forth above, that does not entitle the appellants to recover, because they failed to prove they suffered any damages as a result of the breach. Since a breach of a fiduciary duty is but

one element of a cause of action for breach of fiduciary duty, there is nothing inconsistent in the trial court's findings.

## VI. CONCLUSION

We conclude that the trial court did not err in finding that the property was sold at or near fair market value and that therefore, the appellants suffered no damages. Additionally, the court did not err in discounting the offer from BDG; nor was it error for the court to decline to impose any equitable remedies. Although we find no abuse of discretion in denying each party attorney fees after trial, we vacate the orders granting interim attorney fees and remand the matter to the trial court for a determination of whether justice and equity require the trust to bear these costs.

AFFIRMED IN PART, AND IN PART VACATED
AND REMANDED WITH DIRECTIONS.

JOHN CAMDEN AND MARY CAMDEN, APPELLEES,
v. PAPIO-MISSOURI RIVER NATURAL
RESOURCES DISTRICT, APPELLANT.
___ N.W.2d ___

Filed August 26, 2014.    Nos. A-13-266 through A-13-268.

1. **Eminent Domain: Appeal and Error.** An appeal from the district court's determination that good faith negotiations occurred prior to the filing of a condemnation petition presents a mixed question of law and fact.
2. **Eminent Domain: Jurisdiction.** Statutory provisions requiring good faith attempts to agree prior to institution of condemnation proceedings are jurisdictional, and objection based on the failure of the record to show that the parties cannot agree may be raised at any time by direct attack.
3. **Jurisdiction: Appeal and Error.** The question of jurisdiction is a question of law, which an appellate court resolves independently of the trial court.
4. **Actions: Eminent Domain: Courts.** Pursuant to Neb. Rev. Stat. § 76-704 (Reissue 2009), if any condemnee fails to agree with the condemnor with respect to the acquisition of property sought by the condemnor, a petition to condemn the property may be filed by the condemnor in the county court of the county where the property or some part thereof is situated.
5. **Eminent Domain.** In order to satisfy Neb. Rev. Stat. § 76-704.01(6) (Reissue 2009), there must be a good faith attempt to agree, consisting of an offer made in good faith and a reasonable effort to induce the owner to accept it.