N. O. PETERSON v. ELIZABETH LODWICK ET AL.

FILED APRIL 16, 1895.    No. 5914.

1. Replevin: PROOF. In an action of replevin it devolves upon the plaintiff to prove the ownership of the property in contro-versy, alleged in the petition, his right to immediate possession thereof, and that it is wrongfully detained by the defendants.

2. ———: ———. The facts necessary to be established to entitle a plaintiff in replevin to recover must be shown to have existed at the time the action was commenced.

3. ———: ———: DIRECTING VERDICT. The plaintiff in this case having failed to prove facts sufficient to entitle him to recover, it was not error for the court to direct the jury to return a ver-dict for defendants.

ERROR from the district court of Pierce county. Tried below before ALLEN, J.

*Barnes & Tyler,* for plaintiff in error.

*Wigton & Whitham, contra.*

HARRISON, J.

On the 24th day of May, 1887, the plaintiff in error commenced an action of replevin against the defendants in error in the district court of Pierce county to recover the possession of one brown mare, about eight years old, of the value of $125, of which he alleged in the petition filed he was the owner and entitled to the immediate possession, and also alleged the unlawful and wrongful detention of the property by the defendants. The answer of the defendants was a general denial, except as to the value of the animal, which was admitted to be $125, the value pleaded in the petition. During a term of the district court in Pierce county, and on March 22, 1892, a jury was impaneled for a trial of the issues and the plaintiff introduced his testimony, at the close of which the defendants moved the court to direct the jury to return a verdict in their favor, which motion was sustained and the court so directed or instructed the jury, in accordance with which instruction a verdict was returned for defendants. A motion for a new trial was filed on behalf of plaintiff, and on hearing was overruled and judgment rendered for the defendants. The plaintiff has removed the case to this court for review.

It appears that one F. C. Eldred, who was probably the former owner of the animal in controversy, executed and delivered to the Norfolk National Bank a chattel mortgage, in which it was claimed the animal in suit was included, and also made and delivered to the Farmers & Merchants Bank of Norfolk, Nebraska, a chattel mortgage, in which it was claimed this animal was also included, sub-

ject to the prior mortgage to the Norfolk National Bank; that the banks took possession of this and other property covered by the mortgages and subsequently sold it, the mare in dispute, to the plaintiff. During the trial the mortgage given by Eldred to the Norfolk National Bank, or a certified copy of it, was offered in evidence by the plaintiff and an objection was interposed for defendants that it was "incompetent, irrelevant, immaterial, and no proper and sufficient foundation has been laid; that the description of the property in the mortgage was too indefinite." The objection was sustained and the instrument offered excluded, to which ruling the plaintiff excepted, and one assignment of error refers to this action of the court. A similar objection was made to the offer to introduce the mortgage by Eldred to the Farmers & Merchants Bank, with a like result. Counsel for plaintiff state in their brief that the action of the court in excluding the mortgages was based upon their invalidity by reason of the indefiniteness of the description of the property contained in them. It is then assigned as error: "The court erred in excluding the written agreement of F. C. Eldred on the 9th day of March, 1887, on the back of said chattel mortgage. Said agreement being marked 'Exhibit C.'" The agreement referred to was as follows: "For value received I hereby relinquish all right and claim in and to any and all the within described property, and hereby authorize the owner of the mortgage, and the owner of the second mortgage given to Farmers & Merchants Bank of Norfolk, Nebraska, on same property, to sell and convey absolute title to said property at private or public sale, as may to them or either of them seem best, without notice, by publication or otherwise, and that said property may be sold at Plainview, Nebraska, or in the town of Pierce, Nebraska. Signed March 9, 1887." And a further allegation of error is: "The court erred in excluding the chattel mortgage executed and delivered to the Farmers & Merchants Bank

by F. C. Eldred on the —— day of January, 1887, which is marked 'Exhibit B.' The property in controversy being described in said mortgage." And further that: "The court erred in excluding the parol evidence offered on the part of the plaintiff to show that the property in controversy in this cause was a part of the identical property described in the mortgage marked 'Exhibit B,' and for the further identification of said property." And also: "That the court erred in excluding the evidence of witness N. A. Rainbolt on plaintiff's part to show that the property in controversy was by F. C. Eldred on the 9th day of March, 1887, and in the forenoon of said day, sold and delivered to him and turned out to him as agent for the mortgagors, which was a *bona fide* pre-existing debt due from said Eldred to said banks."

It is contended by counsel for defendants that this being an action of replevin, the defendants' plea of general denial threw upon the plaintiff the burden of proving his right to immediate possession of the animal in controversy, and also the unlawful and wrongful detention of it by the defendants, and that he failed to do so, and that the actions of the court in excluding the evidence indicated in the assignments of error as hereinbefore quoted, if erroneous, which they claim they were not, could not and did not prejudice the rights of plaintiff. The only testimony adduced to show ownership and right to property in the plaintiff was contained in the evidence of George L. Iles, a portion of which was in relation to a sale made by him of the property taken under the mortgages of the banks, and of the mare in dispute, to the plaintiff. He stated as follows:

Q. Mr. Iles, you may state—do you know the horse in controversy in this suit—did you ever see it?

A. Yes, sir.

Q. And you may state when and where-and under what circumstances you first saw the animal.

A. The total amount of property taken under both mortgages was turned over to Owen Carrabine. Owen Carrabine remained at Plainview some days, protected the sheep by shed and made arrangements for the care of the horses, and piled up the machinery and got all the property in shape, and then came to Norfolk, and with both mortgages in my possession I went to Plainview shortly after they were taken, and at a private sale and at auction, I sold off the property.

Q. To whom did you sell the horse in controversy in this case?

A. To a young man by the name of Phillips.

Q. Do you know what became of the horse then?

A. I turned it over to him.

Q. Do you know whether he sold the horse to Peterson, the plaintiff in this suit?

A. I may be mistaken in the name. I sold to a young man.

Q. You sold to the plaintiff in this case?

A. Yes, sir.

Q. What did he pay for it?

A. To the best of my recollection he gave $105.

Q. And you delivered to him the horse?

A. Yes, sir.

*        *        *        *        *        *        *

Q. You state that the animal in controversy in this case, which was sold to Peterson, the plaintiff, was taken possession of by him?

A. By who?

Q. By Peterson, the plaintiff in this case.

A. After I sold it; yes, sir.

This evidence tended to prove that at a date subsequent to the 9th of March, 1887, and very near in point of time to that date, the mare in dispute was sold and delivered to the plaintiff, but did not establish that on the date of the 24th of May, 1887, the plaintiff was either the owner of

the property or entitled to its possession, or its wrongful
detention by the defendants.    Under the issues as joined
by the pleadings, the petition, and the general denial of the
answer it devolved upon the plaintiff to show, first, that he
was the owner of the property replevied; second, that he
was entitled to immediate possession of it; and third, that
it was wrongfully detained by the defendants. (*Moore v.
Kepner*, 7 Neb., 291; *Blue Valley Bank v. Bane*, 20 Neb.,
294; *Gillespie v. Brown*, 16 Neb., 458; *Wilson v. Fuller*,
9 Kan., 176.)    The facts necessary to be established must
be shown to have existed at the date when the action
was instituted.    The evidence introduced on behalf of
plaintiff was insufficient to prove the facts which it was
necessary for him to establish, as hereinbefore outlined, in
order to entitle him to recover in the action, and the evi-
dence which was excluded would not have aided him or
·made the proof any stronger in the portions where it was
defective or lacking, as it was wholly directed to showing
that the parties of whom the plaintiff purchased the mare
had the right to make the sale, and it was not error to ex-
clude it at the time during the trial when the offer to in-
troduce it was made. · It was not then competent or mate-
rial.    We can imagine a condition of the case which might
have arisen had the defendants produced evidence by which
an attack was made upon plaintiff's title as derived by the
purchase of the property by a showing that there was no
right or title in the party from whom he purchased, then
the testimony which was offered might have been quite
pertinent and proper to be admitted, but no such attack
was made.    The plaintiff having failed in his proof, it was
not error for the trial court to direct the jury as it did, to
return a verdict for defendants.    The judgment of the
district court is

AFFIRMED.