ANNA F. ROH, APPELLEE, V. JOSEPH OPOCENSKY, APPELLANT.

FILED NOVEMBER 24, 1933. No. 28605.

Kennedy, Holland & De Lacy, for appellant.

Frederick L. Wolff and Frost, Hammes & Nimtz, contra.

Heard before Goss, C. J., Rose and Paine, JJ., and Begley and Horth, District Judges.

Goss, C. J.

This is an action for damages to plaintiff as a guest in defendant's automobile, driven by his wife. Defendant appeals from a judgment against him.

The injury occurred June 29, 1931. The driver owed the guest the duty of ordinary care. *Garrotto v. Butera,* 123 Neb. 682. It should be noted that the action did not come under the guest statute approved May 1, 1931 (without an emergency section), exempting the owner or operator from liability unless guilty of gross negligence. Laws 1931, ch. 105. The legislature adjourned May 2, 1931. The act did not take effect until three calendar months thereafter. Const. art. III, sec. 27.

Plaintiff, 46, is the wife of a farmer living about two miles east of Abie in Butler county. Defendant is a Willys automobile distributor in South Omaha. The families had been friends since 1921. On June 29, 1931, the Bishop

was to be at the Abie church at 2 o'clock to confirm children. Several of the Roh children were to be confirmed. Anna Roh, 13, daughter of plaintiff, wrote to Josephine Opocensky, 39, wife of defendant, requesting her to be sponsor for her on this occasion. Mrs. Opocensky accepted and invited Helen Stava, married daughter of plaintiff living in Omaha, to accompany her. She accepted and went to the home of defendant to start. For the trip defendant provided a nearly new sedan, used for demonstration purposes, and Mrs. Opocensky drove it to the Roh home on the morning of June 29. Mrs. Stava testified she had previously heard her brother, 26, ask defendant to bring out a demonstrator as his father was in the market for a new car; that when witness called his attention to the fact they were to take the Willys car, defendant informed her he wanted his wife to show it to the folks and if she sold it she would get a fat commission. After a midday dinner, Mrs. Opocensky started to drive her car to church with Anna, the daughter, in the front seat and with Mrs. Roh, Mrs. Stava, and two other of her children in the rear seat. Mr. Roh and other children followed in their family car. The road west to the village was a dirt road with some hills on the way. Mrs. Opocensky had driven a car steadily for the past two years and had driven intermittently before that. She testified that she drove over a hill or two, took a start for the next one "and as I got on top of the hill going down, why my car started swaying, I held it and did all I could to keep it in the road, and I don't know what happened; all at once I was out and all of a sudden it was turned upside down and I didn't know what happened."

The evidence shows that the car finally turned rather sharply to the right and then turned over toward the left just off the traveled part of the roadway at a point where there was no ditch but where it was practically on a level with the roadway. It turned only half way over so it rested on its top with its wheels in the air. The left front tire was partly off the rim in the vicinity of the stem.

The casing was not injured, so it was not what is called a blowout. But the inner tube was deflated with a rip running each way from the stem. There was also some testimony that the tracks of the car as it came down the hill did not differ from the ordinary. From this evidence it might be inferred that the inner tube was torn and deflated in the last movement of the car just before it turned over, but from the swerving of the car as it went down the hill, the jury might infer that the tire became deflated at some distance before it stopped. Both theories are presented in the evidence and arguments.

Helen Stava, when asked what happened at the hill before the car upset, testified: "Mrs. Opocensky was driving quite fast, and I remarked to her, 'Josie, you may be going about forty but, I says, back here it seems like we are sailing;' and she says, 'Don't worry, Helen, I am all right.'"

Stanley Stava, husband of Helen, employed by defendant in his garage, testified that, after the accident, he and defendant drove to the Roh home, arriving that afternoon; Mrs. Opocensky was waiting for them at the house gate when they arrived; defendant asked her, "'How fast were you going?' she says, 'Well, I wasn't going so fast until the second hill before we came to this place, I was going to give the car a run so we could go up the next hill, and give the folks a thrill like a roller coaster, and when we got on that next hill the car began to give a weave, and it went so fast I don't know what happened after that.'"

In the petition the acts of negligence of the driver of the automobile are charged in narrative form in one long sentence; so in the first instruction the court abstracted the charges from the petition and in his own words particularly stated the negligence charged against the driver as follows:

"(a) That she operated said automobile at a high and dangerous rate of speed, without having the same under proper control;

"(b) That she so operated said automobile without attempting to stop or decrease the speed thereof, when one of the tires became deflated;

"(c) That she negligently operated said automobile so that it swayed first to one side and then to the other, for a distance of about 100 yards, and then swerved to the right side of the highway and fell on its left side."

A later instruction, giving the elements required to be established by a preponderance of the evidence, contained one element to the effect that the negligence of the driver must be so established in one or more of the particulars set out in the first instruction and that such negligence was the proximate cause of plaintiff's injuries.

Defendant argues that the court erred in giving the instruction (a), just quoted, and in giving, in connection therewith, an instruction outlining the statute prohibiting driving on a highway "at a rate of speed greater than is reasonable and proper, having regard for the traffic and use of the road and the condition of the road, nor at a rate of speed such as to endanger the life or limb of any person, nor in any case at a rate of speed exceeding forty-five miles per hour." Comp. St. 1929, sec. 39-1102. After quoting the foregoing provisions, the instruction advised the jury that, while a failure to observe the provisions of the statute was not conclusive evidence of negligence, yet, if they found it had been violated in any particular, such evidence of violation might be considered, in connection with all the other evidence and circumstances proved, in determining whether or not the violator was guilty of negligence in the premises. Defendant argues that there was no evidence of a speed of over 40 miles an hour and that such speed over a "level and dry country road" is not evidence of negligence. That was the limit of speed in miles per hour testified to by any witness. It must be admitted that this evidence of speed from witnesses who were inside the car and did not testify from the indication of the speedometer is not of the highest value. Yet it was for the jury to consider. Moreover, Anna Roh, the daughter who sat with Mrs.

Opocensky, when asked what she noticed, if anything, about whether she used the brakes, answered, "She didn't use the brakes, she stepped on the gas, because we would go faster."

Defendant cites *Kelly v. Gagnon*, 121 Neb. 113, as an authority that all negligence as to speed should have been withdrawn from the jury. There the road was level—that is, without hills—the speed was only 30 miles an hour and "no negligence was shown in the manner of driving." The case is not applicable here where the road was hilly and where there were facts from which the jury might infer excessive speed. We deem these instructions appropriate to the proofs. The trial court would have been charged with invading the province of the jury if he had decided as a matter of law that there was no negligence arising out of the rate of speed and lack of control.

Defendant assigns and argues that the court erred in giving instruction (b), heretofore quoted, relating to speed or failure to stop when the tire became deflated; and in connection with that subject, in failing to give defendant's requested instruction to find for defendant on that point. In his answer defendant alleged that his wife was driving the party to church "and that while she was so doing she was exercising reasonable care and driving with care and caution, and that while she was so doing a tire on said automobile blew out causing the car to overturn, and in this connection your defendant alleges and says that the said accident was not in any wise the result * * * of an unavoidable accident because of the fact that said tire blew out while said car was in motion."

While defendant stated in his answer it was a blowout that precipitated the trouble, yet the evidence shows that there was at no time what is commonly called a blowout. Somewhere between the top of the hill and the point where the car stopped the left front tire deflated. Defendant says elsewhere in his brief: "The accident in this case was caused by the left front tire becoming deflated as alleged in plaintiff's petition." He tried the case on this

theory. He requested an instruction in detail on that point, which was properly refused by the court because it assumed: facts which were and should have been left to the jury. In giving this instruction the court presented the theory of defendant as much as that of plaintiff. "A party to an action is entitled to have the jury instructed with reference to his theory of the case, when the pleadings present the theory as an issue and it is supported by competent evidence." *Boice v. Palmer*, 55 Neb. 389; *Chicago, R. I. & P. R. Co. v. Buckstaff*, 65 Neb. 334. See *Link v. Campbell*, 72 Neb. 310.

Defendant assigns error as to the giving of instruction (c), heretofore quoted, relating to negligent operation and weaving of the car, and argues that there was no evidence of negligence of the driver warranting this instruction. This was a rather general charge of negligent driving to which almost any bit of evidence or circumstance resulting in the swerving of the car would be applicable. In addition to the applicable evidence already recited, there was the testimony of Mrs. Stava on this particular subject. She testified that, from the time the car first started to swerve, Mrs. Opocensky would "grab the wheel and pull it one way and then the other, and let go of it altogether, and she kept doing it until finally she let go altogether and run it up on the side dirt, and then finally the car rolled over on its top." Mrs. Opocensky, in her account to her husband in the presence of Stanley Stava, and in her own testimony, gives a frank explanation of the situation by saying, "I don't know what happened after that." All of these items of the evidence justified the court in giving the instruction complained of.

Defendant claims the court erred in admitting the testimony of Mrs. Stava, who testified that, when plaintiff's husband came up and assisted plaintiff out of the car and they were helping plaintiff to the family car, Mrs. Opocensky said: "Oh my G——, Mrs. Roh, here I was trying to give you a thrill, and I just about killed you; what will I do? I wasn't going fast, I was just going to give you a

roller-coaster thrill on the hill; and now, here, you are going to be in bed, and doctor bills." This occurred at the place of the accident and within two or three minutes thereafter. Defendant objected that it was hearsay and not a part of the *res gestæ*. Under the principles announced in *Ridenour v. Lewis*, 121 Neb. 823, and *Perry v. Johnson Fruit Co.*, 123 Neb. 558, what Mrs. Opocensky said on the occasion was admissible as a part of the *res gestæ*. In such a situation, spontaneous declarations by an agent constitute a part of the fact in the *res gestæ* and have whatever probative value the jury may give to them as against the principal. They constitute an exception to the rule as to hearsay evidence.

"Statements made as part of *res gestæ* are substantive evidence of matters stated.

"Driver's declaration that he knew he was driving fast, made while injured plaintiff was being removed from automobile struck by driver, *held* admissible as *res gestæ* against owner of automobile." *Duncan v. Rhomberg*, 236 N. W. 638 (212 Ia. 389).

"No hard and fast rule can be laid down as to the admissibility of evidence as a part of the *res gestæ*. The facts and circumstances presented in different cases vary so widely that the courts have come to the point of adjudging this question as it is presented by the particular case under consideration." 22 C. J. 448.

Under the circumstances of this case, statements of the driver of the car in which plaintiff was injured, made within a few minute after the injury, *held* to be a part of the *res gestæ* and admissible in evidence.

Defendant claims the verdict of $5,000 is excessive. Expert testimony on his behalf described plaintiff as an "hysteric" and that this condition is prolonged by the examinations by doctors and lawyers and by conversations or thoughts about the subject of the accident. The evidence on behalf of plaintiff showed a gash from her forehead to the middle of the top of her head, an injury in the cervical region, two broken ribs, and injuries to her knees.

She was confined to her bed for three weeks during which the family doctor was in attendance twice a day and at least once a week thereafter until plaintiff was able to go to his office. At the time of the trial, eleven months after the accident, there was evidence from which the jury might infer that this farm housewife was unable to do those domestic things at which she was proficient and energetic before her injury, that she has lost 40 pounds, does not maintain her equilibrium when walking, has dizzy spells, faints—frequently as often as twice a week—cannot prepare meals, and that, in the opinion of one physician, her condition is permanent and will become worse. Upon consideration of all the evidence we do not feel justified in deciding the verdict was excessive.

Other errors were assigned. We have considered those that were relied upon and are of the opinion the trial court did not err in its ruling thereon. The judgment is therefore

AFFIRMED.