LOYAL'S AUTO EXCHANGE, INC., APPELLEE, V. ROBERT MUNCH, CHIEF OF POLICE, ET AL., APPELLEES, IMPLEADED WITH LESTER L. KORNFELD, INTERVENER AND APPELLANT.

45 N. W. 2d 913

Filed January 26, 1951.    No. 32791.

*Monsky, Grodinsky, Good & Cohen,* for appellant.

*Abrahams, Kaslow & Carnazzo,* for appellee.

*Herbert M. Fitle,* for appellees Munch et al.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

Loyal's Auto Exchange, Inc., a corporation, brought this action in the district court for Douglas County to replevin a 1947 Ford Tudor automobile. The action was brought against certain police officers and the City of Omaha. Lester L. Kornfeld intervened and claimed

to be the owner thereof. There was a verdict and judgment in favor of the plaintiff. His motion for new trial or in the alternative for a judgment notwithstanding the verdict having been overruled, intervener appealed.

At the time this suit was instituted the automobile was in the possession of the police officers of the city of Omaha who had taken it from the intervener. The police officers and the city of Omaha disclaimed any interest in the automobile and the case proceeded to trial on the issues raised by plaintiff and intervener. For the purpose of this opinion the parties will be referred to as they appeared in the trial court.

The first question raised by the appeal is the sufficiency of the evidence to sustain the verdict. To sustain its contention that it was the owner of the automobile and entitled to the immediate possession thereof plaintiff adduced evidence to the following effect: That on or about May 1, 1947, James B. Skipper, who will hereinafter be referred to as Skipper, purchased the automobile, the ownership of which is herein in question, from the Champion Motor Sales Company of Omaha; that he paid therefor the sum of $2,325 of which $1,325 was in cash and the balance by a loan financed by the Mutual Credit Company of Omaha; that on May 6, 1947, a certificate of title to the automobile was issued by the county clerk of Douglas County to Skipper which certificate had noted thereon that title had been acquired from the Champion Motor Sales Company on May 1, 1947, and that the Mutual Credit Company had a first lien thereon in the sum of $1,322.40; that the certificate of title to the automobile was turned over to the Mutual Credit Company and that it never came into the possession of Skipper; that on July 12, 1947, Skipper sold the automobile to the plaintiff for the sum of $1,800; that plaintiff is a corporation engaged in the buying and selling of automobiles with its principal place of business located in Omaha, Nebraska; that Loyal Katskee was the president, a director, and the

officer in active charge thereof at the time; that of the purchase price plaintiff paid to the Mutual Credit Company the sum of $1,261.71, being the total balance of its lien, and to Skipper the balance in cash; that Skipper did not at that time deliver a certificate of title to the automobile to the plaintiff because it was at all times held and in the possession of the Mutual Credit Company who had the lien thereon; that Skipper gave plaintiff a power of attorney authorizing Sam Moskovitz, an employee of plaintiff, to assign the certificate of title to the automobile to the plaintiff; that possession of the automobile was not delivered to the plaintiff by Skipper, his reason for not doing so was that it was then being used by one of his employees out in the state and that as soon as he returned it to Omaha he would deliver it; that the Mutual Credit Company, upon being paid in full, released its lien and turned over to plaintiff the certificate of title, which it then held; that on the same date Sam Moskovitz, pursuant to the authority given him by Skipper's power of attorney, assigned the certificate of title to plaintiff; that on the same date plaintiff filled in the application for certificate of title to the automobile which it later filed with the county clerk of Douglas County on July 25, 1947; that on July 25, 1947, a certificate of title was issued to the plaintiff; that Skipper had not then delivered the automobile to plaintiff; that on July 26, 1947, at the request of the plaintiff, the police of Omaha picked up the automobile which was in the possession of intervener; that both plaintiff and intervener made claim thereto; that the police refused to turn the automobile over to either party; and that this action was commenced on July 29, 1947.

Intervener adduced evidence to the effect that on April 29, 1947, he paid Skipper $1,455 in cash for the automobile; that shortly thereafter, about two hours, the automobile was delivered to him; that Skipper did not give him a certificate of title thereto although he

knew one was necessary; that he made request therefor; that Skipper told him he would get it from the seller and mail it to him; that Skipper never mailed or gave him a certificate of title to the automobile although he often requested and demanded he do so; that he did, sometime during the first part of July 1947, obtain a receipt from Skipper showing that he had paid for the automobile in full; and that he was at all times in possession of the automobile from the time it was delivered to him up until July 26, 1947, when the police took it from him and from whose possession it was replevied by the plaintiff.

In 1939 the Legislature passed an act "Relating to Title and Transfer of Motor Vehicles," Laws 1939, c. 81, p. 328. The purpose of the act, as disclosed by the title, includes the following: "* * * prohibiting sale or transfer of motor vehicles unless accompanied by assignment of certificate of title; * * *." This act is found in Chapter 60, art. 1, R. S. 1943. Certain sections of this act were amended by the 1945 Legislature. See Laws 1945, c. 140, p. 442.

As amended, section 60-104, R. S. Supp., 1949, so far as here material, provides: "No person * * * shall sell or otherwise dispose of a motor vehicle * * * without delivering to the purchaser or transferee thereof a certificate of title with such assignment thereon as may be necessary to show title in the purchaser, nor purchase or otherwise acquire or bring into this state a motor vehicle * * * except for temporary use."

As amended, section 60-105, R. S. Supp., 1949, so far as here material, provides: "No person * * * acquiring a motor vehicle * * * from the owner thereof * * * shall acquire any right, title, claim, or interest in or to such motor vehicle * * * until he shall have had issued to him a certificate of title to such motor vehicle * * * or delivered to him a manufacturer's or importer's certificate for the same; nor shall any waiver or estoppel operate in favor of such person against a person having

possession of such certificate of title or manufacturer's or importer's certificate for such motor vehicle * * * for a valuable consideration. No court in any case at law or in equity shall recognize the right, title, claim or interest of any person in or to any motor vehicle * * * sold or disposed of, or mortgaged or encumbered, unless evidenced by a certificate of title * * * duly issued, in accordance with the provisions of this act."

The Supreme Court of Ohio, under an act like ours, after fully considering the questions of constitutionality here raised came to the following conclusion: "After a close study of the new law, in connection with a number of authorities, the members of this court are unanimously of the opinion that it represents an authorized exercise of the police power by the General Assembly in relation to a matter of public concern, and is not violative of any part of the organic law of either the state of Ohio or the United States, especially with reference to the delegation of judicial powers and due process of law." State ex rel. The City Loan & Savings Co. v. Taggart, 134 Ohio St. 374, 17 N. E. 2d 758.

In Elder Chevrolet Co. v. Bailey County Motor Co. (Tex. Civ. App.), 151 S. W. 2d 938, section 53 of their act is quoted as follows: " 'All sales made in violation of this Act shall be void and no title shall pass until the provisions of this Act have been complied with.' " The court held, with reference thereto, as follows: "It cannot be validly asserted this was beyond its power. The decision in question makes no such holding. By such a provision freedom of contract is not impaired— it merely regulates the mode of manifestation of the intention of the parties."

As stated in Crawford Finance Co. v. Derby, 63 Ohio App. 50, 25 N. E. 2d 306:

"On the other hand, from the whole scheme of the Certificate of Title Act, especially the sections quoted above, it is apparent that the Legislature intended to set up one and only one method by which liens on or

titles to a motor vehicle could be acquired. To a purchaser, it makes a certificate of title issued by a clerk of courts (in this state county clerks) on a proper application, accompanied by the preceding certificate, either manufacturer's or owner's, the sine qua non to any right or title therein.

"The manufacturer's certificate was the key to the whole situation. As long as plaintiff held it, it knew no one could acquire a title or lien ahead of its lien, nor could 'any waiver or estoppel operate in favor' of any person against it, and it knew that 'no court in any case at law or in equity' could 'recognize the right, title, claim, or interest of any person in or to any [that] motor vehicle.' Section 6290-4, General Code.

"Mr. Derby knew that the only way he could be secure in parting with the purchase price of the automobile was to simultaneously get a proper certificate of title. Sections 6290-4 and 6290-9, General Code. When he intrusted Bedell with his used automobile and his money without such certificate, he did so at his own risk."

And in Associates Investment Co. v. LeBoutillier, 69 Ohio App. 62, 42 N. E. 2d 1011:

"It must be assumed that defendant and plaintiff knew the provisions of the title law, and that both were bound to observe it. In this respect, the opinion comments in Crawford Finance Co. v. Derby, supra, apply here and will not be repeated. The defendant, without getting title to the automobile, trusted Carder, knowing that the latter part of Sections 6290-3 and 6290-4, General Code, required him to have a certificate of title before he could 'acquire any right, title, claim or interest in or to said motor vehicle' and that neither this nor any other court could 'recognize the right, title, claim, or interest of any person [defendant] in or to any [that] motor vehicle * * * unless evidenced by a certificate of title * * *.'

"Any other result than this would only open the door to fraud and evasion which the title law was in-

tended to prevent. Neither on equitable nor legal principles can the defendant's claims be sustained."

As stated in Commercial Banking Corp. v. Active Loan Co., 135 Pa. Super. 124, 4 A. 2d 616:

"We think the pivotal point in these cases is that the cars were not ordinary chattels; they were motor vehicles, the ownership and sale of which are regulated by 'The Vehicle Code' of 1929 and its amendments. * * *

"We held in Auto Bk. Corp. v. Atlas A. Fin. Corp., supra, (at pages 508-9) that under our present vehicle code a certificate of title is a necessary incident to ownership of a used automobile. * * * As Sladkin was expressly prohibited by the statute from owning or leasing the cars without obtaining certificates of title in the manner therein provided, appellant obtained nothing by its purchase which the law will protect. If it feels aggrieved, it has no one but itself to blame."

And in Anderson v. Arnold-Strong Motor Co., 229 Mo. App. 1170, 88 S. W. 2d 419:

"Section 7774, Revised Statutes of Missouri, 1929, is so clear and unequivocal as to the question as to hardly need court interpretation. However, our courts have given interpretation as follows:

" 'It is well settled that unless the certificate is assigned and passed to the buyer of the motor vehicle at the time of its delivery, the sale is absolutely void and no title to the vehicle passes.' [State ex rel. v. Cox, 306 Mo. 537, 268 S. W. 87.]

"As it stands admitted that the defendant never did receive a certificate of title to the car in issue, it follows that the alleged sale to defendant was fraudulent and void."

Prior to our present act the Legislature had passed legislation relative to the transfer of the ownership of motor vehicles. In deciding a similar question involving this legislation in In re Estate of Wroth, 125 Neb. 832, 252 N. W. 322, the court set forth sections 60-310 and 60-325, Comp. St. 1929.

These acts are therein set forth as follows:

"Section 60-310, in part, provides: 'Upon the transfer of ownership of any motor vehicle, its registration shall expire, and the person to whom ownership of such vehicle is registered, and the person to whom ownership of such vehicle is to be transferred, shall forthwith join in a statement of said transfer, indorsed upon the reverse side of the certificate of registration of said motor vehicle, in the space provided for said purpose, which statement shall be signed by the transferer in the manner and form of his signature, contained on the face of said certificate, and which statement shall likewise be signed by the transferee, who shall also set forth, below his signature, his post office address.'

"Section 60-325 contains this proviso: 'Provided, upon the transfer of ownership of any motor vehicle the title shall not pass until the certificate of registration properly executed, shall be filed in the department of public works as required in this article.' "

The court therein held: "Title to automobile can be transferred between living persons only by compliance with sections 60-310 and 60-325, Comp. St. 1929, relative to such transfer." Then the court went on to say: "Title to motor vehicle cannot be passed between living persons by mere oral declarations. In order to pass title it is necessary to comply with the provisions of sections 60-310 and 60-325, Comp. St. 1929. The statute covers transfers of title to motor vehicles either by sale or gift inter vivos. It is incumbent on plaintiff, to establish her title to the automobile in question, to produce, or account for its nonproduction, documentary evidence, showing that the statutory requirements have been complied with."

The following quotations, taken from the foregoing decision and approved therein, are particularly applicable here:

"In the case of Endres v. Mara-Rickenbacker Co., 243 Mich. 5, it was held: * * *

" 'An automobile dealer who sold a car, loaned license plates, and delivered possession to the buyer without delivering a certificate of title as required by Act. No. 16, Pub. Acts 1923, amending Act No. 46, Pub. Acts 1921, is liable as owner, under Act No. 287, Pub. Acts 1925, sec. 11, for the negligence of the buyer in driving the car, since the sale was void.'

"In Isaacson v. Van Gundy, 48 S. W. (2d) (Mo. App.) 208, it was held: 'No title passes unless certificate is assigned buyer at time of delivering motor vehicle (Laws 1927, p. 313).' "

See, also, In re Estate of Nielsen, 135 Neb. 110, 280 N. W. 246.

In Blixt v. Home Mutual Ins. Co., 145 Neb. 717, 18 N. W. 2d 78, in considering our present act we said: "This provision is part of an act the design of which is to control within fixed limits the use and operation of motor vehicles and to establish methods and means for conveyance of title in order that the provisions for control and use may be made effective. It is a regulatory act under the police power. As such, no doubt, it is a valid exercise of the police power."

We then went on to say: "The provision goes far beyond a mere regulation under the police power. It amounts to an invasion of the right of contract, the impairment of rights of property and a restriction upon the right of the courts to weigh and consider evidence and to make determinations with regard to title and ownership of property and contractual rights and obligations."

Insofar as the last statement is concerned we think we were in error. After a further study of the law, particularly in view of the holdings of other states under like or comparable statutes together with our previous holdings, we are now of the opinion that the act represents an authorized exercise of the police power by the Legislature to regulate the transfer of title and ownership of automobiles, which is a matter of public concern. As such it is not violative of any part of the organic

law of either the State of Nebraska or the United States especially with reference to the right of contract, the delegation or restriction of judicial powers, and due process of law.

The legislative act "Relating to Title and Transfer of Motor Vehicles," now Chapter 60, art. 1, R. S. 1943, together with the amendments made thereto, constitutes an authorized exercise of police power on the part of the Legislature and does not violate any of the provisions of our state or federal Constitution. Insofar as Blixt v. Home Mutual Ins. Co., *supra,* holds to the contrary the same is overruled.

A purchaser who receives possession of an automobile without obtaining the certificate of title thereto, as required by our statute, acquires no title or ownership therein. A subsequent purchaser for value of the automobile, who obtains the certificate of title by complying with the statutory requirements relating thereto, obtains the title and ownership thereof. His title and ownership are superior to any rights the first purchaser may have.

This does not determine any of the rights which intervener may have had or now has against Skipper.

In view of the foregoing the trial court was correct when it refused to give instructions Nos. 1, 2, 4, and 5 requested by the intervener. Also the last paragraph of instruction No. 5 given by the court is not a correct statement of the law.

Intervener complains of the court's refusal to give instruction No. 3 requested by him.

"The plaintiff in a replevin action must recover, if at all, upon the strength of his own title to the property involved and not upon the weakness of the defendant's title to said property." Kavanaugh v. Brodball, 40 Neb. 875, 59 N. W. 517.

"In absence of a specific lien or other special interest, the issues in replevin were ownership, right of possession and unlawful detention of the property re-

plevied. Peterson v. Lodwick, 44 Neb. 771, 62 N. W. 1100." State ex rel. Sorensen v. Verdigre State Bank, 130 Neb. 273, 264 N. W. 765.

The plaintiff, in order to show his ownership of the automobile, was entitled to show the consideration he paid therefor. This included the first lien thereon to the Mutual Credit Company in the sum of $1,261.71. See section 60-105, R. S. Supp., 1949. We find no error in refusing to give this requested instruction.

Intervener alleged that plaintiff and Skipper had entered into a conspiracy to defraud him. However, he did not adduce sufficient evidence at the trial to raise this issue as a question of fact. Instructions Nos. 4 and 5 given by the court presented the issue here involved more favorable to the intervener than he was entitled to under the evidence adduced.

This situation is covered by the following from Kline v. Metcalfe Construction Co., 148 Neb. 357, 27 N. W. 2d 383: "As stated in In re Estate of Keup, 145 Neb. 729, 18 N. W. 2d 63: ' " 'The giving of erroneous instructions is not cause for reversal, if the instructions are more favorable to the complaining party than he is entitled to under the law.' (Webb v. Omaha & S. I. R. Co., 101 Neb. 596, 164 N. W. 564)." Holley v. Omaha & C. B. Street Ry. Co., 110 Neb. 541, 193 N. W. 710. The rule is stated in 5 C. J. S., sec. 1678, p. 824, as follows: "Any error in sending the case or an issue to the jury is not a basis for objection on appeal where it operates in favor of appellant; and so a submission of the case to the jury furnishes appellant with no ground of complaint where the evidence is such as to warrant the court in directing a verdict against him. * * * or where such submission gives the jury an opportunity to find against appellee on a question of fact that should not have been submitted to it; * * *.' ' "

Intervener further contends that the court erred when it refused to give his requested instruction No. 6 which relates to the effect of the notarial acts performed by

Loyal Katskee with reference to the instruments herein involved if the jury found he was a stockholder in the plaintiff corporation at the time of the transaction.

A notary public is disqualified to act as such officer when he has a direct pecuniary interest in the matter and under such a situation cannot lawfully take the acknowledgment.

This court has often held that a stockholder in a corporation, who is likewise a notary, has such a direct beneficial interest in the corporation as to disqualify him from taking an acknowledgment to an instrument running to it. See, Horbach v. Tyrrell, 48 Neb. 514, 67 N. W. 485, 37 L. R. A. 434; Wilson v. Griess, 64 Neb. 792, 90 N. W. 866; Trevett, Mattis & Baker Co. v. Reagor, 112 Neb. 470, 200 N. W. 449; Anderson v. Cusack, 115 Neb. 643, 214 N. W. 73; Chadron Loan & Building Assn. v. O'Linn, 1 Neb. (Unoff.) 1, 95 N. W. 368; Hedbloom v. Pierson, 2 Neb. (Unoff.) 799, 90 N. W. 218.

Loyal Katskee acted as notary on all three instruments upon which plaintiff bases its rights, that is, Skipper's power of attorney to Sam Moskovitz to assign his certificate of title to plaintiff, the assignment of the certificate of title by Moskovitz pursuant thereto, and plaintiff's application for the certificate of title.

" 'A party to an action is entitled to have the jury instructed with reference to his theory of the case, when the pleadings present the theory as an issue and it is supported by competent evidence.' Boice v. Palmer, 55 Neb. 389; Roh v. Opocensky, *ante,* p. 551." Swengil v. Martin, 125 Neb. 745, 252 N. W. 207.

Section 60-114, R. S. 1943, of the act relating to "Title to Motor Vehicles" provides the various forms to be used in complying with the requirements thereof. The "Assignment of Certificate of Title" is in affidavit form and must be subscribed and sworn to before a notary public to complete its execution. Likewise the "Application for Certificate of Title" is in affidavit form and to

be properly executed must be subscribed and sworn to before a notary public.

From a study of the act, particularly sections 60-104, 60-105, and 60-107, R. S. Supp., 1949, and sections 60-106, 60-108, and 60-117, R. S. 1943, it is clear that the legislation contemplates that the forms provided therein must be fully and properly executed in order to meet the requirements thereof.

The evidence shows that prior to the organization of plaintiff corporation in April 1947 the business it now operates was owned and operated by Loyal Katskee. He and his wife organized plaintiff corporation and put their money into it. He became president thereof and remained in active management of the business and handled the transaction herein involved.

In a deposition taken of him by intervener Loyal Katskee testified that he had been a stockholder in plaintiff corporation since its organization and was such on July 12, 1947. However, at the time of the trial he testified he was mistaken in regard thereto and that he did not become a stockholder until in October 1947. The books and records of the plaintiff with reference thereto were not produced.

Under this situation the plaintiff contends there is no substantive proof that Loyal Katskee was a stockholder at the time of the transaction because his statements or admissions made in the deposition could be used for impeachment only because Katskee was not a party to the suit, citing the following principle as controlling: "This contradiction of the son's testimony as to a statement made by him in regard to a long past event, he not being a party to the action, was not substantive evidence. At best, such evidence, if believed by the jury, could only go to the weight of the son's testimony. Zimmerman v. Kearney County Bank, 59 Neb. 23." Sindelar v. Hord Grain Co., 116 Neb. 776, 219 N. W. 145. See, also, Costello v. Hild, 152 Neb. 1, 40 N. W. 2d 228.

It is true that Loyal Katskee is not a party to the action as plaintiff is a corporation. However, he was the president and in active charge of the business at the time. Corporations must, of necessity and from the very nature of their being, deal through their officers and agents.

Generally the declarations and admissions of executive officers and managers as agents of a corporation, made while acting within the scope of such authority and in connection with the performance of some duty to which such declarations are pertinent, are admissible against such corporation. See, 2 Jones on Evidence (2d ed.), § 980, p. 1798; 31 C. J. S., Evidence, § 355, p. 1130; 20 Am. Jur., Evidence, § 600, p. 511; Wert v. Equitable Life Assurance Society, 135 Neb. 654, 283 N. W. 506.

There are a few jurisdictions that hold that declarations or admissions of corporate officers and agents made while they are testifying are not binding on the corporation because while testifying they are not acting for the corporation but are speaking for themselves individually. Such a rule might be logical where the corporation is not a party but certainly where, as here, it is seeking to enforce its rights and the declarations or admissions relate thereto it can have no application.

As stated in 2 Jones on Evidence (2d ed.), § 978, p. 1795: "The rule has been explicitly laid down that a corporation, municipal as well as private, is bound by the declarations of its officers, where such declarations accompany, and are explanatory of, an act done by the officer in the scope of his authority."

We think the statements made by Loyal Katskee in the deposition, as to his status as a stockholder of the plaintiff corporation at the time he acted as notary, do not sufficiently relate themselves to the transaction which plaintiff here seeks to enforce that they are admissible in evidence as substantive proof of that fact. Consequently they could be used only for impeachment purposes. There being no other competent evidence on

this issue for the jury to consider, the court was correct in not submitting it.

Intervener also complains of· the court's refusal to give his requested instruction No. 7 and of its informing the jury, by instruction No. 4, that if they found for the intervener it should be in the sum of $1,850. In view of the jury's finding for the plaintiff and our holdings herein the matter becomes immaterial.

In view of the foregoing we affirm the judgment of the trial court.

.AFFIRMED.

YEAGER, J., dissenting.

I respectfully dissent from the majority opinion in this case. The dissent does not go to everything that is contained in the opinion. It does go however to the proposition which is basic in the determination of the action.

My objection is that the majority opinion upholds section 60-105, R. S. Supp., 1949, as a valid exercise of the police power of the state whereas in Blixt v. Home Mutual Ins. Co., 145 Neb.· 717, 18 N. W. 2d 78, this court held that it was not, which holding I submit properly construed the provision.

The statutory provision to the extent necessary to quote it here is as follows: "No person * * * acquiring a motor vehicle * * * from the owner thereof * * * shall acquire any right, title, claim, or interest in or to such motor vehicle * * * until he shall have had issued to him a certificate of title to such motor vehicle * * * or delivered to him a manufacturer's or importer's certificate for the same; nor shall any waiver or estoppel operate in favor of such person against a person having possession of such certificate of title or manufacturer's or importer's certificate for such motor vehicle * * * for a valuable consideration. No court in any case at law or in equity shall recognize the right, title, claim or interest of any person in or to any motor vehicle * * * sold or disposed of, or mortgaged or encumbered, unless evi-

denced by a certificate of title * * * duly issued, in accordance with the provisions of this act."

In Blixt v. Home Mutual Ins. Co., *supra,* it was said:

"This provision is part of an act the design of which is to control within fixed limits the use and operation of motor vehicles and to establish methods and means for conveyance of title in order that the provisions for control and use may be made effective. It is a regulatory act under the police power. As such, no doubt, it is a valid exercise of the police power.

"The provision goes far beyond a mere regulation under the police power. It amounts to an invasion of the right of contract, the impairment of rights of property and a restriction upon the right of the courts to weigh and consider evidence and to make determinations with regard to title and ownership of property and contractual rights and obligations."

While it is true that in the opinion in Blixt v. Home Mutual Ins. Co., *supra,* no case was cited to support the conclusion arrived at it occurs to me that the case at bar classically demonstrates its validity and the fallacy of the conclusions arrived at in the majority opinion herein.

In order to make my point clear I shall restate the facts as they are disclosed by the record. I do not suggest that the facts are incorrectly stated in the majority opinion. They are correctly stated but not in such manner as to present the focus which appears to me to be appropriate.

On April 29, 1947, one James B. Skipper as owner of the automobile in question here sold it to Lester L. Kornfeld, the intervener herein, for $1,455. Two hours later it was delivered to him. He retained possession of it from that time until July 26, 1947. He never received a certificate of title to the automobile although he often demanded it from Skipper. He did however early in July receive a receipt for his payment. Skipper did not himself have a title certificate until May 6, 1947. The

certificate was left with Mutual Credit Company which had a lien for $1,322.40.

On July 12, 1947, Skipper sold the automobile to the plaintiff and gave plaintiff a power of attorney authorizing one Sam Moskovitz, an employee of the plaintiff, to assign the certificate of title to the plaintiff. Possession was not at that time or later delivered to the plaintiff.

Pursuant to the authority of the power of attorney an assignment of certificate was executed and on the basis thereof plaintiff on July 25, 1947, secured a certificate of title to the automobile from the county clerk.

On July 26, 1947, at the behest of the plaintiff and without writ or process out of any court and without any other lawful authority the police department of the city of Omaha took the automobile from the possession of Lester L. Kornfeld, the intervener herein, without his consent.

Thereafter the plaintiff instituted this action in replevin against the chief of police and another police officer of the city of Omaha to recover possession of this automobile. It based its right of recovery on ownership evidenced by certificate of title. Kornfeld was not made a party to the action.

The police officers disclaimed any interest in the action and interposed no defense. Kornfeld intervened and claimed the right of possession by reason of ownership acquired by purchase of and payment for the automobile and delivery of possession to him as has been hereinbefore described.

The majority opinion effectually concludes that under the authority of the statute quoted Kornfeld was debarred from asserting any right or claim of right to title or ownership in this automobile in this action or in any action at law or equity.

The effect of this conclusion is to run afoul of well-established fundamental principles of law relating to property and rights therein and thereto.

It is well established in this jurisdiction that a person in the exclusive possession of personal property is prima facie presumed to be the owner thereof and that a stranger to the transaction by which the possession was obtained is charged with notice of the claims of the possessor. Booknau v. Clark, 58 Neb. 610, 79 N. W. 159; First Nat. Bank v. First Nat. Bank, 111 Neb. 441, 196 N. W. 691.

No wrong on the part of Kornfeld led the plaintiff into the purchase of this automobile, so therefore there is neither legal nor equitable basis upon which to base a conclusion that Kornfeld should be the victim of the fraud of Skipper rather than the plaintiff.

To the extent that section 60-105, R. S. Supp., 1949, declares that no person acquiring a motor vehicle from the owner thereof shall acquire any right, title, claim, or interest in or to such motor vehicle until he shall have had issued to him a certificate of title to such motor vehicle or delivered to him a manufacturer's or importer's certificate for the same for a valuable consideration and to the extent that it declares that no court in any case at law or in equity shall recognize the right, title, claim, or interest of any person in or to any motor vehicle sold or disposed of or mortgaged or encumbered, unless evidenced by a certificate of title duly issued, in accordance with the provisions of this act, it amounts in my opinion to an invalid, unlawful, and unconstitutional invasion of the right of contract, the impairment of rights of property, and a restriction upon the rights of the courts to weigh and consider evidence and to make determinations with regard to title and ownership of property and contractual rights and obligations.

In the majority opinion, referring to the statutory provision in question, it is said: "As such it is not violative of any part of the organic law of either the State of Nebraska or the United States especially with reference to the right of contract, the delegation or restriction of judicial powers, and due process of law."

With this statement I cannot agree. Its effect is to impair the obligation of a contract and in the case at bar under the majority opinion it has not only impaired the obligation but it has utterly destroyed the fully executed and consummated contract of Kornfeld and has denied him access to either law or equity in regard to it.

I submit that what was said in Blixt v. Home Mutual Ins. Co., *supra*, represented a proper attitude toward the statutory provision in question and that it should be adhered to here. The fact that in other jurisdictions legislative enactments like or similar to this one have been sustained as valid and constitutional should not be regarded as an obstacle in the path of proper legal and constitutional interpretation by this court.

This provision was once stricken down and it should be permitted to remain so stricken, and the intervener herein should be permitted in this replevin action to have his rights under law to this automobile determined, the effect of which, on the record, would be to say that he was entitled in the district court to a directed verdict in his favor and a judgment thereon for possession.

SIMMONS, C. J., dissenting.

I dissent.

In Blixt v. Home Mutual Ins. Co., 145 Neb. 717, 18 N. W. 2d 78, we considered the following provision found in section 60-105, R. S. Supp., 1949: "No court in any case at law or in equity shall recognize the right, title, claim or interest of any person in or to any motor vehicle, hereafter sold or disposed of, or mortgaged or encumbered, unless evidenced by a certificate of title or manufacturer's or importer's certificate duly issued, in accordance with the provisions of this Act." We held: "The provision goes far beyond a mere regulation under the police power. It amounts to an invasion of the right of contract, the impairment of rights of property and a restriction upon the right of the courts to weigh and consider evidence and to make determinations with

regard to title and ownership of property and contractual rights and obligations."

Section 60-105, R. S. Supp., 1949, also includes the following: "* * * nor shall any waiver or estoppel operate in favor of such person against a person having possession of such certificate of title or manufacturer's or importer's certificate for such motor vehicle * * * for a valuable consideration."

The court now holds that all of Chapter 60, article 1, R. S. Supp., 1949 (which includes section 60-105, R. S. Supp., 1949), does not violate any provision of our state or the federal Constitution "especially with reference to the right of contract, the delegation or restriction of judicial powers, and due process of law." The court overrules directly the above holding in the Blixt case.

Article V, section 9, of the Constitution provides: "The district courts shall have both chancery and common law jurisdiction, and such other jurisdiction as the legislature may provide * * *."

In Lacey v. Zeigler, 98 Neb. 380, 152 N. W. 792, we held with reference to this provision: "The equitable jurisdiction of the district court is therefore beyond the power of the legislature to limit or control."

We have followed this principle repeatedly down as late as the case of In re Trust Estate of Myers, 151 Neb. 255, 37 N. W. 2d 228.

In Burnham v. Bennison, 121 Neb. 291, 236 N. W. 745, we stated: "It may be said that, by the terms of the Constitution, district courts in Nebraska are vested with 'chancery jurisdiction.' Const. art. V, sec. 9. This we have construed as vesting district courts with equity jurisdiction which they may exercise without legislative enactment. Matteson v. Creighton University, 105 Neb. 219. Indeed, this court is committed to the view that, not only is equity jurisdiction conferred by the terms of the Constitution, but as thus conferred it is beyond the power of the legislature to limit or control. That, while the legislature may grant such other jurisdiction as it

may deem proper, it cannot limit or take from such courts their broad and general jurisdiction which the Constitution has conferred upon them." This was followed in State ex rel. Sorensen v. Farmers State Bank, 121 Neb. 532, 237 N. W. 857, 82 A. L. R. 7; In Hall v. Hall, 123 Neb. 280, 242 N. W. 607; in State v. Odd Fellows Hall Assn., 123 Neb. 440, 243 N. W. 616; in State ex rel. Sorensen v. Nebraska State Bank, 124 Neb. 449, 247 N. W. 31; and in John A. Creighton Home v. Waltman, 140 Neb. 3, 299 N. W. 261.

In State ex rel. Wright v. Barney, 133 Neb. 676, 276 N. W. 676, we held: "It is obvious that the exclusive and preeminent nature of the equity jurisdiction conferred on the district courts by these constitutional provisions is equally true of the common-law jurisdiction likewise vested in the same tribunals."

In Clark v. Lincoln Liberty Life Ins. Co., 139 Neb. 65, 296 N. W. 449, we held: "The district court is a creation of the Constitution as is also its common-law and equity power and jurisdiction. This power and jurisdiction are not limited by terminology and, further, the terminology does not admit of legislative limitation, but only of legislative extension."

I do not undertake to discuss the various specific applications we have made of this principle save to point out that in Tombrink v. Sarpy County, 120 Neb. 160, 231 N. W. 783, we applied laches as an equitable doctrine enforceable under constitutional powers independently of any statute of limitations.

The court now puts its approval upon a statute that limits the application of the doctrine of waiver and estoppel and that limits the jurisdiction of courts at both law and equity, and this is done although we have repeatedly declared that "It is an imperative duty of the judicial department of government to protect its jurisdiction at the boundaries of power fixed by the Constitution." State ex rel. Sorensen v. State Bank of Minatare,

123 Neb. 109, 242 N. W. 278. See, also, State ex rel. Wright v. Barney, *supra.*

The court holds: "A purchaser who receives possession of an automobile without obtaining the certificate of title thereto, as required by our statute, acquires no title or ownership therein." That is a positive statement and, as made, without exceptions. The issues of this case require no such determination.

Suppose A, who is an owner and has the requisite certificate of title, agrees to sell a specific car to B. B pays the full purchase price to A and is given possession of the car. All that remains is for A to get and deliver the certificate of title to B. A then refuses to do that one thing. We have held that "Courts of equity may grant specific performance of an oral agreement to transfer title to personal property as well as to real estate." Hackbarth v. Hackbarth, 146 Neb. 919, 22 N. W. 2d 184. A brings an action for specific performance. Would he not then, under this opinion, be met with a well based contention that "No court * * * shall recognize the *right,* title, *claim* or *interest*" of B because B does not have the requisite certificate of title; that under this holding B has acquired no title or ownership in the car; and that the act denies him the equitable rights of specific performance? Such I think is a reasonable construction of the court's opinion.

But the court does not stop there. The court holds: "A subsequent purchaser for value of the automobile, who obtains the certificate of title by complying with the statutory requirements relating thereto, obtains the title and ownership thereof. His title and ownership are superior to any rights which the first purchaser may have."

Now, suppose that C purchases for value from A subsequent to the sale to B, and C obtains a certificate of title by complying with the statutory requirements. This rule holds that C obtains rights of title and ownership superior to those of B and by that impliedly holds that

B has some rights of title and ownership. This is in conflict with the preceding rule which is that B has acquired no title or ownership, otherwise the holding announces the obvious that a purchaser from one who has a title acquires a title and ownership superior to one who has no title and ownership.

Now, suppose that subsequently C purchased for value and got the certificate of title from A with full knowledge of every part of the transaction between A and B. Under this rule C's title and ownership are superior to any rights of B and B has only an undetermined right of a personal action of some kind against A. Would not C in equity be subject to the same rule that we have repeatedly followed and last restated in Beard v. Morgan, 143 Neb. 503, 10 N. W. 2d 253, that "'A party who purchases real estate with knowledge that another has a contract of purchase for the same is not a bona fide purchaser; and if he acquires such knowledge at any time before the payment of the consideration, he will not be protected as a purchaser in good faith. * * *

"'A purchaser with notice is liable to the same equity, stands in his place, and is bound to do that which the person he represents would be bound to do by the decree. He takes the estate subject to the charge, and stands in the place of his vendor.'" We there affirmed a decree of specific performance. But here, under the court's opinion, C would not be subject to an action of specific performance and more, under the statute here approved, an equity court would not be permitted to recognize any right, claim, or interest of B, a bona fide purchaser, against C, a purchaser with notice.

If this opinion is sound and the Legislature has the power to deny equitable rights and remedies as to one kind of personal property, then I see no barrier to its doing it as to all kinds of personal property and to real property.

I cannot believe that the Legislature ever intended such results to flow from this act, nor do I believe, even

if it had that intent, that the Legislature has the constitutional power to so provide.